[No. E037030. Fourth Dist., Div. Two. Mar. 23, 2006.]

EVELYN JENKINS, Plaintiff and Appellant, v.
COUNTY OF RIVERSIDE, Defendant and Respondent.

594

**COUNSEL**

Roth & Roth and Diane Catran Roth for Plaintiff and Appellant.

Lewis, Brisbois, Bisgaard & Smith, Gail F. Montgomery; Arias Aaen and Christopher D. Lockwood for Defendant and Respondent.

OPINION

**KING, J.**—Plaintiff and appellant Evelyn Jenkins was employed as a temporary employee by defendant and respondent County of Riverside (County). She alleged that after becoming disabled she was denied accommodation and wrongfully terminated. The trial court granted the County's motion for summary judgment and gave judgment in favor of the County. We affirm.

### FACTS AND PROCEDURAL HISTORY

Plaintiff was originally hired in 1992 as a temporary County employee in the position of office assistant II (OA II). She worked full-time in the medical records department of the County hospital. Her initial task was to file old fetal monitor records which had piled up in the basement of the County medical building. Plaintiff was also trained in the general duties of the medical records department, and, once the backlog of fetal monitor files had been cleared away, her time was occupied with pulling medical charts and filing medical charts.

Pulling charts would consist of taking medical charts from shelves in a central storage area, or tracking down charts if they were not on the shelf. Plaintiff would pull hundreds of charts in a day. Some charts were heavy, about the weight of a heavy book. Some charts had multiple files, up to two inches in thickness. Plaintiff would sometimes carry more than one chart at a time. Filing charts required plaintiff to replace the charts in the central filing system. Plaintiff would file perhaps 30 to 40 charts per day.

In 1996, plaintiff injured her right wrist while lifting charts out of a box. She filed a workers' compensation claim for her injury. She had surgery to treat the carpal tunnel injury to her wrist. Plaintiff was off work after the surgery for a "[c]ouple months," and returned to light duty for six weeks to two months.

In January 1998, plaintiff's treating physician, Dr. Eric Sabety, released her to return to work without restrictions. On March 24, 1998, however, Dr. Sabety wrote a final evaluation report stating that, although she had made a full recovery from the carpal tunnel surgery, she still had residual pain, most likely attributable to problems in the cervical spine. Dr. Sabety rated plaintiff's condition as permanent and stationary for workers' compensation purposes, and opined that, "[o]n the open labor market, I would recommend a preclusion against heavy lifting with the right upper extremity, as well as repetitive gripping activities." The report also stated that plaintiff was "working

with symptoms," and that she had been "placed in a more physically demanding area than she was prior to the injury. In other words, she is now doing a job that is more difficult than what she was doing when she was originally injured. All of these issues need to be looked at. Ultimately, she has to make a decision as to whether or not it is worth doing. She states that they are moving to the new hospital on the 31st. . . . However, for the present, I believe that she can continue to perform her usual and customary work."

Plaintiff alleged that, "[o]n or about May 26, 1998, at approximately 8:30 a.m., plaintiff presented to the County documentation from her physician that her disability required that her duties at work be restricted and requested reasonable accommodation for said disability," and that, "[a]t approximately 2:30 p.m. on the same day, May 26, 1998, the County terminated plaintiff's employment . . . ." Plaintiff alleged that the termination was solely because of her disability. The termination letter recited that plaintiff was terminated because temporary employees are limited to a maximum of 1,000 hours of work per year under the County's salary ordinance, and plaintiff had exceeded that number.

After plaintiff was terminated in May 1998, the County wrote a letter regarding her workers' compensation claim. Linda Troutmiller, the workers' compensation claims adjuster handling plaintiff's workers' compensation claim, notified plaintiff on July 13, 1998, that plaintiff was potentially eligible for vocational rehabilitation benefits, because the County had determined that plaintiff's medical condition would prevent return to her regular job duties. Plaintiff accepted the offer of vocational rehabilitation benefits. In 2001, plaintiff was trained in accounting and in voice recognition software (to obviate the necessity for using her right hand for repetitive use of a computer mouse or keyboarding). She has been employed as a bookkeeper or doing general accounting since January 2002.

In April 1999, plaintiff filed a claim with the Department of Fair Employment and Housing (DFEH), asserting disability discrimination and the failure to accommodate her disability, in violation of the Fair Employment and Housing Act (FEHA). (Gov. Code, § 12900 et seq.) On or about April 7, 1999, the DFEH issued plaintiff a right-to-sue letter.

On July 2, 1999, plaintiff filed a first amended complaint against the County in an action in the United States District Court, alleging violation of civil rights (42 U.S.C.A. § 1983), breach of contract (i.e., violation of a

collective bargaining agreement), and violation of the FEHA, both because of disability discrimination and for refusal to provide reasonable accommodation for plaintiff's disability.[1]

The County moved for summary judgment on the claims of plaintiff's federal action. On June 28, 2000, the United States District Court granted the County's motion. Plaintiff appealed to the Ninth Circuit Court of Appeals. In January 2002, the Ninth Circuit reversed, holding that plaintiff had not been afforded a proper opportunity to oppose the motion, because an expedited docket procedure had precluded her from conducting discovery on the issue of whether she was qualified to be a regular County employee. In the meantime, by stipulation, plaintiff had dismissed her state law claims from the federal action.

In June 2001, plaintiff filed her initial complaint in state court in this action. After the County demurred to the initial complaint, plaintiff filed her first amended complaint, the operative pleading in this action, in July 2002. Plaintiff alleged causes of action for violation of the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.), for failing to compensate plaintiff as a regular permanent employee, for violation of the County's salary ordinance by treating and classifying her as a temporary employee when she in fact did the same work as a regular employee, for violation of the FEHA in terminating plaintiff because of her disability and in failing to offer her reasonable accommodation for her disability, and for failure to enroll plaintiff as a regular member of the Public Employees Retirement System (PERS).

The County demurred to plaintiff's first amended state court complaint. The first (breach of Meyers-Milias-Brown Act) and second (violation of salary ordinance) causes of action were dismissed by stipulation of the parties. The fourth (PERS enrollment) cause of action was dismissed at a status conference. On November 6, 2002, the County answered the first amended complaint on the remaining cause of action, for violation of the FEHA.

After filing its answer in the state court action, the County again moved for summary judgment in the federal action. Plaintiff also moved for summary

---

[1] Plaintiff has requested that this court take judicial notice of certain opinions of the Ninth Circuit Court of Appeals with respect to her federal court action. The County has requested that, if this court grants the request for judicial notice, we take judicial notice of the entire Ninth Circuit record, as set forth in the County's three-volume set of "Documents in Support of Respondent's Request for Judicial Notice," filed in this court on June 5, 2005. By orders of May 23, 2005, and July 11, 2005, this court reserved ruling on the requests for judicial notice for decision with the appeal. Pursuant to Evidence Code section 452, subdivision (d) (permitting judicial notice of the records of any court), we now grant the requests for judicial notice of the entire Ninth Circuit record, as submitted by the County. The matters of which we take judicial notice include the Ninth Circuit opinions of which plaintiff had asked us to take judicial notice.

judgment in the federal action. The federal district court again granted summary judgment for the County, and plaintiff appealed that ruling. The Ninth Circuit held, in a *per curiam* decision, that the only undetermined issue before it was whether plaintiff was "qualified" for a regular, permanent position, and concluded that she was. Accordingly, on December 22, 2004, the Ninth Circuit panel reversed the judgment in favor of the County, and remanded with directions to enter summary judgment in favor of plaintiff on the cause of action for violation of her due process rights.

Meanwhile, in the state court action, the County had also moved for summary judgment. The motion was filed on September 22, 2003. Plaintiff opposed the motion. After numerous continuances, the motion was heard on July 9, 2004. On August 23, 2004, the court issued its ruling on the motion for summary judgment. The court found that plaintiff was disabled, and that she was a qualified person under the FEHA, i.e., she was able, with or without accommodation, to perform the essential tasks of her job safely. (Gov. Code, § 12940, subd. (a)(1).) For purposes of plaintiff's accommodation claim, she was a qualified person, in that she was able to perform the essential duties of the position to which she sought reassignment. Plaintiff failed to defeat the motion for summary judgment, however, on the issue of causation. The trial court concluded that the terms of public employment are fixed by statute or ordinance, and not by contract. Thus, no implied contract to terminate only for good cause may be established by the passage of time. The County's salary ordinance prohibited employing a temporary employee for more than 1,040 hours per year without expressly extending that term. Plaintiff conceded that no request to extend her hours had ever been made, and that no such extension had ever been granted. The letter terminating plaintiff's employment stated that the departmental director "cannot continue your employment with Riverside County Regional Medical Center." The court further held that "Previous violations [of the salary ordinance] by other administrators do not establish an implied contract of permanent employment. Even if the County, or one of its administrators, had unspoken, even unlawful, motives for notifying [plaintiff] that her temporary employment was discontinued, the reason itself—completion of 1040 hours of service within a 1-year period—was not a pretext. [¶] Put another way, [plaintiff's] termination was not an adverse employment action; termination after 1040 hours of work was one of the terms of her employment." The court also held that temporary employees whose terms of employment have expired have no right to reasonable accommodation, where that reasonable accommodation would extend the employment terms beyond their statutory limit. "Affording disabled temporary employees a right to continued employment while denying it to non-disabled temporary employees provides more than equal opportunity. [Plaintiff] is not entitled to such a preference." Accordingly, the court granted the County's

motion for summary judgment "as a matter of law, in that [plaintiff] cannot establish that she was subjected to an adverse employment action because of her disability."

The state court entered judgment for the County on September 23, 2004; plaintiff filed her notice of appeal on November 19, 2004. A few weeks later, the Ninth Circuit Court of Appeals issued its ruling, as already noted, ordering the trial court to grant summary judgment to plaintiff in the federal court action. On February 9, 2005, the Ninth Circuit withdrew its memorandum decision and published a *per curiam* decision. (See *Jenkins v. County of Riverside* (9th Cir. 2005) 398 F.3d 1093.)

## ANALYSIS

### I. Plaintiff's Contentions

Plaintiff's basic contention in her federal action was that, while she was nominally classified as a "temporary" employee, she was, in reality, a regular employee. Thus, she was entitled to the same rights and privileges as "regular" employees. In the state action, plaintiff argues under the FEHA that the County unlawfully terminated her because of her disability and that it wrongfully failed to accommodate her disability.

On appeal from the state trial court's grant of summary judgment, plaintiff more specifically contends that: (1) regardless of the County's classification of plaintiff as a "temporary" employee, she was actually a "regular" employee under the County's salary ordinance; thus her termination was an adverse employment action under the FEHA; and (2) irrespective of whether plaintiff was a "temporary" or a "regular" employee, she was entitled, as a reasonable accommodation, to be appointed to a vacant "regular" position.

Relative to both arguments, plaintiff also submits that, based on *Jenkins v. County of Riverside, supra,* 398 F.3d 1093 (the appellate decision in plaintiff's federal action), the County is collaterally estopped from denying that plaintiff is anything other than a "permanent" employee. Lastly, she contends that the state trial court erred in granting the summary judgment motion on a ground not raised by either party.

### II. Standard of Review on Summary Judgment

We review an order granting or denying a motion for summary judgment de novo, examining the evidence before the trial court. We independently determine the effects of that evidence as a matter of law. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 161, 163 [80 Cal.Rptr.2d 66].) "In undertaking our

independent review of the evidence submitted, we apply ' "the same three-step process required of the trial court: First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citations.]" ' " (*Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 392 [134 Cal.Rptr.2d 689].)

### III. Step One—Issues Tendered by the Pleadings

The sole viable cause of action remaining in plaintiff's state court complaint was for violation of the FEHA. As to that cause of action, plaintiff alleged that, when she was hired in 1992, she was "employed . . . in the regular position of [OA] II," and that she "worked full-time and continuously in that position for six years until she was terminated on May 26, 1998." She claimed that both she and the County "intended that plaintiff's employment would be full-time and continuous for an indeterminate time." Plaintiff worked more than 1,000 hours in each of the years she was employed at the County. Throughout her employment with the County, plaintiff was at all times designated as a "temporary" employee. Plaintiff alleged that, although her position was classified as "temporary," the same position was filled both before and after she occupied it; the need to fill the position was ongoing.

During the course of plaintiff's employment, she "became physically disabled as defined by the FEHA." Plaintiff alleged that, on the morning of May 26, 1998, she "presented to the County documentation from her physician that her disability required that her duties at work be restricted and requested reasonable accommodation for said disability." Plaintiff claimed that the County denied her reasonable accommodation for her disability, a violation of the FEHA.

In addition, plaintiff asserted, the County terminated her employment the same afternoon, May 26, 1998. She asserted that she was terminated solely because of her disability, also in violation of the FEHA. Plaintiff exhausted her administrative remedies with the DFEH, and was entitled to bring this action against the County.

Plaintiff's pleading raised two separate aspects of alleged FEHA violations: wrongful termination for an improper, discriminatory reason (i.e., physical disability) and the failure to provide a reasonable accommodation for plaintiff's disability.

■ Under the FEHA, plaintiff can establish a prima facie case of discrimination by proving that: (1) she suffered from a disability; (2) with or without reasonable accommodation, she could perform the essential functions of the employment position she held or desired; and (3) that she was subjected to an adverse employment action because of her disability. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 254 [102 Cal.Rptr.2d 55].)

■ At a motion for summary judgment in a discrimination case, the defendant "may meet its burden by showing that one or more of these prima facie elements is lacking, *or that the adverse employment action was based on legitimate nondiscriminatory factors*. [Citation.] [¶] If the employer has met its burden by showing a legitimate reason for its conduct, the employee must demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus* . . . ." (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038 [128 Cal.Rptr.2d 660], first italics added.)

As to plaintiff's discrimination theory, both sides submitted evidence on plaintiff's disability and whether she could perform the essential functions of her position with or without accommodation. As to these elements of the prima facie case, the trial court found triable issues of fact. We do not disagree. What the trial court relied on, however, in granting summary judgment, was the third element of the prima facie case: that the County had a legitimate, nondiscriminatory reason for discharging plaintiff, namely, that she was a "temporary" employee and subject to dismissal under Riverside County Ordinance No. 440 (as it read in 1994; Ordinance No. 440). (Ord. No. 440 limits a "temporary" employee to working no more than 1,040 hours per year.)

Plaintiff does not dispute the trial court's conclusion that, if plaintiff was a "temporary" employee, she was subject to discharge; what she contends, however, is that she was a "regular" employee not a "temporary" employee and thus Ordinance No. 440 cannot serve as a legitimate nondiscriminatory reason for her discharge. Thus the basic issue before us on the discrimination claim is whether plaintiff was a "regular" or a "temporary" employee.

■ As to the accommodation portion of her FEHA claim, for plaintiff to establish a prima facie case, she must prove that she is qualified for the position as to which an accommodation is sought. (*Hastings v. Department of Corrections* (2003) 110 Cal.App.4th 963, 971 [2 Cal.Rptr.3d 329].) Again, this issue turns on whether she is regarded as a "regular" or a "temporary" employee. If a "regular" employee, the record before the trial court clearly established triable issues as to whether she could be accommodated by "reassignment to a vacant position." (See Gov. Code, § 12926, subd. (n)(2).)

If a "temporary" employee, plaintiff was not qualified for a "regular" position under the County's civil service ordinances, and hence, the County had no duty to accommodate. (See *Hastings v. Department of Corrections, supra,* at pp. 976–977.)

With these issues in mind, we now examine whether plaintiff was a "regular" or a "temporary" employee.

### IV. Step Two—The County Was Entitled to Judgment in Its Favor on Both the Discrimination and Accommodation Theories, Because Plaintiff Was Not, and Did Not Become, a Regular, Permanent Employee Under the Salary Ordinance

As indicated previously, the facts are essentially undisputed. The critical matter is the proper meaning and interpretation of the County's salary ordinance. Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo. (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212 [100 Cal.Rptr.2d 718].)

#### 1. *Salary Ordinance Provisions*

■ The terms of public employment are set by statute, not by contract. (*Miller v. State of California* (1977) 18 Cal.3d 808, 813 [135 Cal.Rptr. 386, 557 P.2d 970]; accord, *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 23–24 [276 Cal.Rptr. 303, 801 P.2d 1054].) The County's board of supervisors adopted Ordinance No. 440, the salary ordinance. The County's salary ordinance sets out the structure of classification of County employees.

First, generally, an "employee" is defined as "all persons employed by the County . . . , other than officers." (Ord. No. 440, § 1(h).) Employees are employed in "positions," defined as "any office or employment to which a group of duties and responsibilities is assigned or delegated by competent authority, the performance of which requires the full time or part time employment of one person, except as provided in Section 10.B(2) [job sharing]." (Ord. No. 440, § 1(q).)

Employees may be full-time or part-time. Full-time employees are those "whose positions require the number of hours usual or prescribed for normal permanent County employment. All positions shall be full time unless otherwise designated or unless the compensation is fixed upon the basis of part time work." (Ord. No. 440, § 1(i).)

A "permanent employee" is defined as "a regular or seasonal employee who has completed the initial probationary period in a position, not including any incumbent of an at-will position as specified in this ordinance." (Ord. No. 440, § 1(o).) A "seasonal employee" is one "whose employment is not continuous but is regularly recurrent in the same capacity because of particular functions which occur periodically each year; such employment may be permanent, but of an intermittent nature." (Ord. No. 440, § 1(v).)

A "temporary" employee is defined as "an employee who is not a regular or seasonal employee." (Ord. No. 440, § 1(w).) "Regular" and "seasonal" employees may become permanent employees, after passing a probationary term. A "regular position" is "a position established by this ordinance on an ongoing basis, as distinct from a seasonal or temporary position. 'Regular employee' means a holder of a regular position." (Ord. No. 440, § 1(u).) An "emergency employee" is an employee "whose employment is occasioned by a condition of emergency only." (Ord. No. 440, § 1(g).)

Several observations deserve note at this point. Although a "regular position" is defined in terms of being established on an "ongoing" basis, nothing in the statutory definitions requires that a "temporary" *position* be limited to any specific duration. Moreover, a "temporary" position is contemplated in the ordinance to require "full-time" work, unless specifically provided otherwise. Although regular and seasonal employees may become permanent after serving a probationary period, "any incumbent of an at-will position" may not. In addition, the term "temporary employee" is contrasted with an "emergency employee." The distinction between regular positions and temporary positions thus appears to be one of classification, rather than strictly duration.

Section 6 of the salary ordinance covers the terms of temporary employment. Temporary employees are compensated at the first step of the salary range of the position into which they are hired; they do not receive step advances based upon hours of service, in contrast to regular employees. (Ord. No. 440, § 6. A.) Temporary employees are not to be used to perform the work of a regular employee who is briefly absent, as for a vacation. (Ord. No. 440, § 6. B.(1).) Service in a temporary position is not to be used as a probationary period or a trial period of employment. Temporary employees may apply for appointment to a regular or seasonal—i.e., potentially permanent—position. (Ord. No. 440, § 6. B.(2).)

Section 6. C. prescribes the length of time a temporary employee may work: "(1) No temporary employee shall be permitted to work in the same capacity in which he/she performs substantially continuous service for more than 1040 working hours (6 months of full time service) during any one-year

period. However, for good cause to be specified in writing by the department head, . . . a period of temporary employment may be extended for two successive periods of 520 hours each (3 months each).

"(2) In the event that a department head has unusual circumstances to warrant employment of a temporary employee longer than 2080 hours (one year at full time), the department head may request approval of the board of supervisors to extend the service by 2080 hours (one year at full time), setting forth the justification and hire date of the temporary employee. Any additional extension shall require further Board approval annually." (Ord. No. 440, § 6. C.(1)–(2).)

### 2. *Administrative Operation of the County's Civil Service System*

The County's annual budgeting process calls for each County department to submit requests for all the permanent, seasonal and temporary positions it will require to meet its staffing needs. The County board of supervisors (Board of Supervisors) has the ultimate authority to approve the appropriations for the staffing levels of each County department.

The medical records department "had a horrendous backlog where they always needed extra help to make ends meet. . . . [T]here was always going to be that need, and there was probably not the budget to add X number of additional staff so I think they tried to . . . accomplish that through use of temporaries here and there." Some temporary positions continued on a long-term basis, although a tenure of six years in a temporary position was unusual. Throughout the time that plaintiff worked for the County, the medical records department had authorized 61 regular OA II positions, and 16 temporary OA II positions.

Regular and temporary positions were authorized differently. Only the Board of Supervisors was empowered to create regular, permanent positions. Originally, approval of new temporary positions also required Board of Supervisors approval, but eventually, a department could request authorization for a temporary position, and the human resources department and the executive staff could approve new temporary positions. Only the Board of Supervisors was empowered to transform a temporary position into a regular position. A temporary worker could not simply be assigned to a regular position, because it would interfere with the civil service rights of regular employees and other civil service applicants. A person hired as a temporary employee was free to compete for a regular position, however, like any other applicant.

Not only were regular and temporary positions authorized differently, but regular and temporary employees were also treated differently. Temporary

employees were paid wages, but unlike regular employees received no benefits. Plaintiff, for example, received no salary step increases, no vacation time, no sick leave, and no medical benefits. Temporary employees were at-will employees, and did not receive pretermination due process notice and hearings. Regular employees did receive salary increases, health benefits and vacation time. Once they had passed a probationary period, they were entitled to due process in employment actions such as demotion, discipline or termination.

Because of these differences in compensation, it was generally cheaper to have a temporary employee rather than a regular employee.

Throughout the time of plaintiff's tenure as a County employee, she was classified as a temporary employee, and she never received benefits. A temporary employee may compete with other applicants for hire as a regular employee by completing the civil service selection process. For a position like OA II, the applicant must take and pass a written test. Those who pass the test are placed on an eligibility list. The eligibility list is valid for a period of approximately six months. After the list expires, candidates must again take and pass the written examination to remain eligible for consideration.

A department requesting to fill a vacancy notifies the human resources department. The human resources department would prepare a certification list of eligible candidates to refer to the department making the personnel request. Normally, the applicants who scored highest on the written test would be selected for interviews by the requesting department. The oral interview (sometimes a department would conduct second interviews) was part of the application and examination process. A department was not required to hire a candidate merely because the candidate had passed the written test. Occasionally, a department would not accept any of the applicants referred for interview.

a. *History of Plaintiff's Attempts to Qualify for a Regular Position*

The history of plaintiff's attempts to secure a regular position showed that:

In 1992, plaintiff twice took and passed the written test. She was selected for interviews for five positions, but she was not offered any of those positions.

Plaintiff passed the written test in 1993, but she failed to appear for an interview for which she had been selected.

In 1994, plaintiff took the examination twice, and failed both times. Plaintiff applied for only one examination in 1995, and failed that test also.

In 1996, plaintiff passed the examination successfully. She was interviewed, but was not selected for a regular position.

Plaintiff took and passed the November 1997 administration of the qualifying examination. She was scheduled for 10 interviews. She attended nine of those interviews, but was not selected as the successful candidate.

Plaintiff did not apply for the test administered in May 1998.

As a result of having passed the November 1997 test, plaintiff was invited to interview for regular OA II positions on June 10, 1998, and June 22, 1998 (after her termination date). She was not selected for either position.

### b. *Plaintiff Was Not a Regular, Permanent Employee*

First, as plaintiff's application history tellingly demonstrates, she at all times knew that she was classified as a temporary employee. She was paid less than permanent employees and did not receive benefits. Before her termination, she never claimed or behaved as if her position had been transformed into a regular, permanent position. Rather, she at all times regarded herself as *not* a regular employee; otherwise, she would not have taken the examinations or attended the interviews prerequisite to hiring in a regular OA II position.

Second, the County presented evidence concerning its administrative procedures and practices with respect to temporary employees. While not binding on the courts, the County's interpretation is entitled to deference, and will not be overturned unless clearly erroneous. (*Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 234 [5 Cal.Rptr.2d 782, 825 P.2d 767]; *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 568 [59 Cal.Rptr.2d 186, 927 P.2d 296].) The assistant human resources director for the County averred that "[t]emporary employees who reach 1000 hours annually are normally terminated or they are rotated to a different position if they are part of [the] Temporary Assistance Pool as a matter of routine. It is unclear as to how [plaintiff] 'slipped through the cracks.' Once terminated because of reaching the 1000 hours permitted, a temporary employee could apply for another position."

Another declaration explained, in part, how plaintiff " 'fell through the cracks.' " Plaintiff suffered her workers' compensation injury in 1996. The County had a policy not to terminate employees who had workers' compensation claims pending, until after the employee had been rated permanent and stationary. Plaintiff was not rated permanent and stationary until Dr. Sabety issued his report in March 1998. Other evidence also suggested that it might

not be unusual for County department heads to mistakenly overlook a temporary employee's annual hourly limit. In April 1996, the County personnel director sent a letter or memorandum to all department heads, reminding them of the proper procedures for extending temporary employment under the salary ordinance. Temporary employees were authorized to work up to 1,040 hours per year. The chief executive officer could approve two extensions of 520 hours (an additional total of 1,040 hours) without board approval. "Any further extensions can be approved by the Board of Supervisors." Department heads were advised to review the list of their temporary employees, and to secure the proper extensions or "take action as appropriate."

█ Plaintiff argues that the County's failure to follow the prescribed procedures in the salary ordinance relative to extending her temporary position operated somehow to convert her temporary position into a regular, permanent one. We disagree. Although the salary ordinance does provide procedures for extending temporary employment, no provision of the salary ordinance prescribes a penalty for failure to comply with the proper procedures. The legislative and budget oversight powers of the County are granted to the Board of Supervisors, not to administrative bureaucrats. Only the Board of Supervisors has the power to create regular, permanent positions. The salary ordinance does, after amendment, delegate some authority to create temporary positions, but the power to create permanent positions belongs exclusively to the Board of Supervisors. It is simply unthinkable that administrative bureaucrats could create permanent positions through carelessness and inattention, binding the County to all the permanent budgetary commitments attendant on such permanent positions.

█ The California Constitution confides the power to provide for the number, compensation, tenure and appointment of county employees to the governing body of each county: here, the Board of Supervisors. (Cal. Const., art. XI, § 1, subd. (b).) In *Hicks v. Board of Supervisors* (1977) 69 Cal.App.3d 228 [138 Cal.Rptr. 101], the Court of Appeal held that, "[s]ince the power to levy a tax is purely legislative, and since the budget is an indispensable prerequisite to a valid tax levy, the adoption of the budget is clearly a legislative function. [Citations.] The fixing of the number of employees, the salaries and employee benefits is an integral part of the statutory procedure for the adoption of the county budget, the fixing of the tax rate, and the levy of taxes. [Citations.] [¶] This legislative function may not be delegated to an executive officer, leaving no discretion in the governing board [citation]; and may not be controlled by the courts." (*Id.* at p. 235.)

These principles, together with the failure to provide any sanction or remedy in the salary ordinance for failure to properly comply with the extension procedures for temporary positions, effectively scotch the idea that

the failure of plaintiff's superiors to carry out an administrative duty (to apply for extensions of her employment) should usurp the board's function of fixing the number of County employees and their compensation.

The only consequence which logically proceeds from the failure to apply for and obtain extensions of plaintiff's employment is not that plaintiff was magically transformed into a permanent employee (albeit one who had never served a probationary period), but that she should have been terminated, as a matter of routine, years ago. Plaintiff received a windfall—extended employment to which she was not entitled—and cannot now be heard to complain.

Third, the relevant cases do not stand for the proposition that plaintiff had become a de facto permanent employee. *McGillicuddy v. Civil Service Com.* (1933) 133 Cal.App. 782 [24 P.2d 942] (*McGillicuddy*), the case on which plaintiff primarily relied, does not support her position here.

In *McGillicuddy*, seven city employees began their employment under an old version of the city charter. A new version came into effect in January 1932. The employees were terminated in April 1932. The new charter prescribed that the civil service rights of city employees were continued from the old charter to the new charter. The question was whether the terminated employees had any civil service rights. The city maintained that they were " 'emergency employees', that 'they had no standing as civil service employees' and 'therefore had no civil service rights to be protected under . . .' . . . the new charter." (*McGillicuddy, supra,* 133 Cal.App. at p. 783.)

The old charter had provided for regular positions in the civil service system to be filled by appointment from a certified list of qualified candidates. The civil service employees would serve a period of probation not to exceed six months. A civil service employee could be discharged before the probationary period had expired, if the department head gave a written reason and the civil service commissioners agreed. If the employee was not discharged before the expiration of the probationary period, " 'his appointment shall be deemed complete.' " (*McGillicuddy, supra,* 133 Cal.App. at p. 784.)

" 'To prevent the stoppage of public business, or to meet extraordinary exigencies,' " the head of any department could, with approval of the civil service commissioners, authorize " 'temporary appointments, to remain in force not exceeding sixty days, *and only until regular appointments . . . can be made.' " (McGillicuddy, supra,* 133 Cal.App. at p. 784, italics added.)

"It will thus be seen that the old charter contemplated but two types of appointments, to wit: First, 'regular appointments' made from the eligible list, which appointments were to be made on probation for not to exceed six

months; and second, 'temporary appointments' to remain in force only until 'regular appointments' could be made." (*McGillicuddy, supra*, 133 Cal.App. at p. 784.) Moreover, as the court pointed out, "[i]t [was] quite obvious as conceded by counsel that it was intended that such 'temporary appointments' should be made only in the event that there was no list of eligibles from which 'regular appointments' could be made." (*Ibid.*)

The civil service commission had made rules under the old charter that " '[a]ll positions which are expected by the appointing power to exist for a period of six months or over shall be considered . . . as permanent positions. All other positions shall be considered as temporary positions, and appointments to temporary positions shall automatically expire at the end of four months. The probable period of employment must be specified by the appointing power in its requisition.' " (*McGillicuddy, supra*, 133 Cal.App. at p. 785.) "By this rule the commission attempted to classify positions as 'permanent positions' and 'temporary positions', which classification, regardless of the nature of the position, was to be arbitrarily based on the expectation of the appointing power as stated in its requisition . . . ." (*Ibid.*)

The employees at issue in *McGillicuddy* had been selected from a valid eligible list. Each one had been employed in the same position for over a year, and some for several years. Their "temporary" appointments were not abolished at the time they were discharged. Because they had been properly appointed from the eligible list, and certified as qualified by the civil service commission, they were not "emergency" appointees—i.e., appointments made in the absence of an eligible list, and only until such certified eligible workers could be appointed. (*McGillicuddy, supra*, 133 Cal.App. at p. 785.)

The commission attempted to argue that they were a third classification of employee—"temporary employees"—based solely on the regulations. The regulations, as outlined above, required the hiring department to state the anticipated length of employment when requesting hirees. Thus, the commission argued, the plaintiff employees were "temporary employees," solely because their appointing departments had described each position as existing for less than six months in the requisition. (*McGillicuddy, supra*, 133 Cal.App. at p. 786.)

The court held that the positions, which had in fact gone on for far longer than the six-month period required for probation, were properly regarded as "permanent positions," inasmuch as the charter had contemplated only two kinds: permanent and emergency. Under the charter's own provisions, the employees' appointments had been " 'deemed complete' " when they passed the maximum probation period of six months without being discharged.

The circumstances here are, however, quite different, not least because the authorizing documents (the charter in *McGillicuddy* and the salary ordinance here) are different.

Plaintiff made much below of the term "temporary" and appeared to argue that ongoing work could never be named by the appellation "temporary." She relied on the statement of the *McGillicuddy* court, that "the commission had no power to adopt a rule whereby positions which were neither temporary in fact *nor temporary by the law of their creation,* could be designated temporary, thereby preventing the eligibles appointed thereto from acquiring permanent tenure after serving through the probationary period." (*McGillicuddy, supra,* 133 Cal.App. at p. 787, italics added.) The court did not say that there could never be "temporary" positions created by fundamental local legislation; it merely said that the charter had not done so, and that the commission could not accomplish by rulemaking what the charter did not authorize.

By contrast here, temporary positions are indeed "temporary by the law of their creation," in the salary ordinance. The ordinance need not use words in their colloquial sense. Unlike the city charter at issue in *McGillicuddy,* the salary ordinance contemplates classes other than "regular" and "emergency." The city charter in *McGillicuddy* contemplated hiring "emergency" employees only when a qualified list of candidates for regular employment was not available. Here, by contrast, both "regular" and "temporary" workers must take and pass the same qualifying examination. Under the city charter in *McGillicuddy,* an "emergency" appointment (i.e., by a candidate not qualified from the civil service eligibility list) was permitted only for limited purposes, only for a limited time, and until a regular appointment could be made. Here, the salary ordinance does not limit the purposes for which temporary positions may be created. The salary ordinance might contain limitations on the hours a temporary *employee* may work, but it does not limit the duration of any temporary employment *position.* A "position," again, is defined as "any office or employment to which a group of duties and responsibilities is assigned or delegated by competent authority, the performance of which requires the full time or part time employment of one person . . . ." (Ord. No. 440, § 1 (q).) Both regular and temporary positions fulfill this definition. Nothing in this definition requires the County to use temporary positions only until a regular employee candidate can be appointed to the position. The foundational legislation thus contemplates two separate kinds of employees, regular and temporary, working side by side, meeting the same qualifications, performing the same cluster of work duties, but compensated very differently. Regular employees receive salary step increases. They receive vacation pay and sick leave. They receive health benefits. They must serve a probationary period, but thereafter are permanent employees. Temporary employees do not receive salary step increases. They do not accrue vacation time or sick leave. They do

not receive health benefits. They do not serve a probationary period, and they always remain at-will employees.

The city charter at issue in *McGillicuddy* did not provide for such temporary positions or temporary employees. The salary ordinance here does.

Plaintiff's attack on the ordinance is, at bottom, that it is somehow unfair to treat two employees, who must meet the same qualifications and perform the same job duties to the same standards, differently from one another. The difficulty is that plaintiff never, either in the federal action or in this state suit, claimed an equal protection violation. She never claimed that she was treated differently from others in the same class or position as herself. Had she done so, the claim would undoubtedly have failed. All that is required to defeat plaintiff's claim is a rational basis for the different classifications of employees. The evidence established such a rational basis without contradiction: financial efficiency. The County can allocate its available resources as needed to accomplish its ongoing necessary tasks without incurring substantial additional, permanent financial burdens.

*Villain v. Civil Service Commission* (1941) 18 Cal.2d 851 [117 P.2d 880] (*Villain*), the only California Supreme Court case on the topic, also supports our conclusion. There, the charter at issue provided that, when an officer requisitioned an appointment to a civil service position, the commission would certify the person standing highest on the eligible list of candidates. The candidates on the list were ranked by their scores on the civil service examination; the eligibility list remained valid for four years. (*Id.* at p. 853.)

When an officer requisitioned a position to be filled, the civil service commission would certify whether that position would be temporary, seasonal, or permanent. Any positions not designated as permanent would be temporary or seasonal. The candidate would be notified of the classification of the position. Appointees to permanent positions would be on probation for six months. Temporary or seasonal positions would expire automatically after five months. Anyone appointed to a temporary or seasonal position would, on expiration of the five months, be returned to their standing in the eligibility list, and could not be considered for reappointment to the same temporary or seasonal position in the same department until after one day had elapsed after the previous termination. Persons on the eligibility list who only wanted permanent positions could waive appointment to a temporary or seasonal position. (*Villain, supra*, 18 Cal.2d at p. 854.)

The plaintiffs in *Villain* were eligible candidates who had accepted temporary positions. They each had served multiple terms of five months, upon which their employment expired. They waited one day, and were then

reappointed as temporary employees once again. (*Villain, supra*, 18 Cal.2d at p. 855.) It was undisputed that, if the positions had been certified by the civil service commission as permanent positions, none of the plaintiff employees would have been appointed to the position, because their standing on the eligibility list was low. (*Ibid.*)

Eventually, the plaintiff employees' appointments were not renewed, and they sued the municipality. They claimed that the scheme of temporary positions, which expire every five months, with one day of layoff in between successive periods, was a subterfuge to prevent them from acquiring permanent status, and to avoid the necessity of reclassifying the positions as permanent. (*Villain, supra*, 18 Cal.2d at p. 855.) They argued that their successive periods of employment, which far exceeded the six months required for probation in a permanent position, had ripened into de facto permanent employment. (*Ibid.*)

The California Supreme Court held otherwise. The court stated that the charter "specifically directs the commission to determine whether a position is, in character, temporary, seasonal, or permanent, and to notify the candidate so that he may have knowledge of the probable duration of employment, and . . . expressly authorizes the commission to adopt rules to govern its action in carrying out this and other civil service provisions of the charter." (*Villain, supra*, 18 Cal.2d at pp. 855–856.)

"[I]n formulating and adopting [the serial expiration of temporary positions rule] and in applying it," the civil service commission in *Villain*, in contrast to *McGillicuddy*, "was acting by virtue of and in conformity with the express mandate and direct authority conferred upon it by the charter." (*Villain, supra*, 18 Cal.2d at p. 856.) The California Supreme Court found that the plaintiff employees had *not* become permanent employees, because the scheme of temporary positions was contemplated and permitted by the authorizing legislation.

*Welch v. City of Long Beach* (1952) 109 Cal.App.2d 561 [241 P.2d 26] is to the same effect. There, the plaintiffs "had qualified for and had been employed by the city as patrolmen in the police department. Each of the appellants had, on July 31, 1947, taken and passed a promotional examination for the position of inspector, which examination resulted in a promotional eligible list upon which appellants' names were given, respectively, the 12th, 14th, 15th and 17th places. All promotions to the position of inspector were required to be filled by the appointment of the person next in line therefor on this list. [¶] The trial court found that 'under the terms of the salary ordinance then in force and effect, eighty (80) positions of Inspector were created, but the City Manager at no time authorized the filling of more than thirty-six (36) positions of

Inspector; that under the provisions of the City Charter . . . the sole power of making appointments to fill positions in the Police Department . . . was vested in the City Manager.' " (*Id.* at p. 562.)

The plaintiffs had been assigned by the police chief to work as "acting inspectors," and the police chief had asked the city manager to fill more of the authorized inspector positions, but the city manager failed or refused to do so. The city manager allegedly had stated that he did not authorize filling more of the inspector positions because of lack of funds; the plaintiffs asserted that funds were always available which were sufficient and could have been used to fill more inspector positions. (*Welch v. City of Long Beach, supra,* 109 Cal.App.2d at p. 563.)

The plaintiffs sued, claiming that they had attained the status of permanent employment as inspectors, because they had worked as "acting inspectors" for over six months (the probationary period). The court held that no vacancies existed in inspector positions. The sole power of appointment was vested in the city manager, and the salary ordinance had created no such position as "acting inspector." " 'The City Manager certainly has the right to determine if a condition exists which requires the appointment of additional Inspectors. . . . In the absence of abuse of discretion, for a court to hold that additional Inspectors shall have been appointed, would be for said court to take over the administration of the City of Long Beach and to replace the City Manager as administrative head of the City.' " (*Welch v. City of Long Beach, supra,* 109 Cal.App.2d at p. 564.) Neither did the chief of police have any power to appoint the plaintiffs to the position of inspectors. There was no showing that any of the 36 inspector positions had become vacant, or that any of the plaintiffs had been appointed to fill one of those positions. "There is nothing in the record to indicate that the appellants ever legally occupied any other position than that of patrolmen." (*Id.* at p. 565.)

As a matter of California law, the mere lapse of time that an employee occupies a position designated as "temporary" is not sufficient, of itself, to render the employee a de facto regular or permanent employee. Whether an employee has achieved regular or permanent status depends entirely on what the authorizing legislation provides. Here, the salary ordinance clearly contemplates both regular and temporary positions; temporary is not defined in terms of limited duration of the position, but in terms of the characteristics of wages and benefits. The standard of classification established by the salary ordinance " 'is not arbitrary, unreasonable, or unjust.' " Even if an employee in a temporary position is limited in the hours he or she may work, nothing in the salary ordinance provides that the position itself must expire as well. The failure to perform a bureaucratic duty in seeking authorization to extend a temporary employee's hours cannot usurp the power

confided to the Board of Supervisors, and to the Board alone, to legislate in budget matters, and to set the terms of public employment within the County. A negligent oversight cannot transform plaintiff into a regular, permanent employee.

■ In that plaintiff was not a regular, permanent employee, her employment was at will. She could be terminated at any time for any reason. The number of hours authorized for a temporary employee was limited; it was a term of plaintiff's temporary employment that her employment would end upon exceeding the number of authorized hours. The County's reason for terminating plaintiff was therefore legitimate.

Equally, in that the classifications of "temporary" and "regular" employees are valid, plaintiff was not entitled, as a "reasonable accommodation" for her injury, to be assigned to a regular, permanent position without having been selected in the ordinary course. To do otherwise would infringe upon the seniority and other rights of regular employees who obtained their positions through the civil service procedures. Such an assignment is contrary to the salary ordinance, which provides that a temporary employee may not be assigned to do the work of a regular employee who is absent, that service in a temporary position is not to be used as a probationary period or a trial period of employment, and that temporary employees must apply, like any other candidate, for appointment to a regular position.

The County therefore demonstrated, as a matter of law, that it was entitled to judgment in its favor.

### V. Step Three—Plaintiff Has Failed to Raise a Triable Issue of Fact, or Otherwise Show That Summary Judgment Was Improperly Granted

#### 1. *Plaintiff Has Failed to Raise a Triable Issue of Fact*

The facts concerning plaintiff's employment were undisputed. She was at all times classified as a temporary employee and compensated as a temporary employee. The salary ordinance provided that temporary employees would not be permitted to work beyond the limit of 1,040 hours per year, unless an extension was granted. Plaintiff conceded that no such extension was ever applied for or granted. Plaintiff did not dispute that she worked more than the 1,040 hours allowed to a temporary employee. Plaintiff continued to compete for open regular OA II positions, just as any nonregular employee would.

Plaintiff also adduced no facts to contradict the County's evidence about its policies and practices. For example, the County provided evidence of its

policy not to terminate injured employees while those employees had open workers' compensation claims. Plaintiff had an open workers' compensation claim. Plaintiff's own evidence was wholly consistent with this policy; she was terminated at precisely the time that she notified the County that her workers' compensation claim was resolved. For another example, the County provided evidence of its general policy to terminate temporary employees who exceeded the number of hours allowed under the ordinance. This evidence was bolstered in two ways: First, the County provided evidence of a memorandum reminding department heads to take appropriate action under the salary ordinance, either to seek extensions for or to terminate temporary employees whose tenures were approaching the statutory limit. Second, the County provided evidence of its TAP, or temporary assistance pool, program, pursuant to which temporary employees who had exhausted the number of hours they could occupy a particular temporary position, were routinely rotated to different temporary positions. Plaintiff provided no evidence to counter any of these matters. Plaintiff has failed to raise any factual dispute to show that the County's stated reasons were untrue, pretextual, or otherwise motivated by discriminatory animus. Summary judgment was properly granted on the basis of the absence of any disputed material issue of fact.

2. *The Ninth Circuit Decision Does Not Collaterally Estop the Trial Court's Ruling on the State Motion for Summary Judgment*

Plaintiff argues that the question of her status as a temporary employee has already been bindingly determined against the County in the federal action. In other words, notwithstanding the evidence the County adduced in favor of its motion for summary judgment here, the County is collaterally estopped from relying on this evidence to argue plaintiff's temporary status, because the federal action has already conclusively determined this issue against the County.

a. *Requirements of Collateral Estoppel and Standard of Review*

■ A party who asserts the bar of collateral estoppel bears the burden of demonstrating each of its elements. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223].) An earlier ruling "will be given collateral estoppel effect when (1) the issue is identical to that decided in a former proceeding; (2) the issue was actually litigated and (3) necessarily decided; (4) the doctrine is asserted against a party to the former action or one who was in privity with such a party; and (5) the former decision is final and was made on the merits." (*Silver v. Los Angeles County Metropolitan Transportation Authority* (2000) 79 Cal.App.4th 338, 357 [94 Cal.Rptr.2d 287].)

The issue whether collateral estoppel applies is itself a question of law, which question we review de novo. (*Krell v. Gray* (2005) 126 Cal.App.4th 1208, 1217 [24 Cal.Rptr.3d 764].)

Plaintiff argues that she has demonstrated the five requirements for collateral estoppel: the issue—whether she has been transformed into a regular, permanent employee—was the same in the federal and the state actions, even though the causes of action were different. That issue was actually litigated and necessarily decided in the federal case. The parties in both actions are the same, and the Ninth Circuit's decision is now final and was made on the merits.

### b. *The Scope of the Federal Decision Included the Question Whether Plaintiff Was a Temporary or a Regular Employee*

██ It is somewhat difficult to glean, from the peculiar procedural history of the federal action, the scope of what was necessarily ultimately decided in the Ninth Circuit's *per curiam* opinion. In determining the collateral estoppel effect of an earlier decision, where the scope of the earlier judgment is ambiguous, we may consider the entire record in the earlier proceeding. (*Casad v. Qualls* (1977) 70 Cal.App.3d 921, 927 [139 Cal.Rptr. 243]; see also *Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 399 [117 Cal.Rptr.2d 427].)

The federal action proceeded on the basis of motions for summary judgment, not upon a complete trial record.

In the first summary judgment ruling, the federal district court ruled that plaintiff did not acquire the status of a regular, permanent employee as a result of her tenure of employment with the County. First, she was hired into a position which was always designated, under the salary ordinance, as "temporary." The salary ordinance "expressly contemplates full time, ongoing positions for 'temporary employees,' not merely emergency appointments until a permanent employee can be hired. . . . Unlike the plaintiffs in *McGillicuddy*[, *supra*, 133 Cal.App. 782], plaintiff was hired to fill an on-going temporary position, not a permanent position." The budget for staffing the medical records department included 61 permanent and 16 temporary OA II's as part of the hospital's continuous staff.

Second, other precedents indicated that employing a temporary worker beyond the statutory time period authorized for temporary workers did not ripen into permanent employment. (*Villain, supra*, 18 Cal.2d 851; *Welch v. City of Long Beach, supra*, 109 Cal.App.2d 561; *Marasco v. Morse* (1940) 9 Misc.2d 296 [22 N.Y.S.2d 315].) The failure to employ the proper

procedures to extend plaintiff's temporary appointment may have violated the salary ordinance, but it did not alter the character of plaintiff's position from temporary to permanent.

Third, plaintiff had failed to show that she was "qualified" for a permanent position. Plaintiff contended that she was "at all times qualified for the permanent position of [OA] II, that she adequately completed the entire application procedure to receive this position, and that she was at all times on the eligible list for permanent employment." The County had provided evidence, however, suggesting that plaintiff was not continuously qualified for permanent employment. The court held that plaintiff's conclusional statements could not establish a genuine disputed issue of fact to avoid summary judgment.

Fourth, plaintiff's claim for implied promise or estoppel must fail, because the terms of public employment are governed by statute or ordinance, not by contract. Plaintiff's unilateral expectations, even if she had received assurances that she could be terminated only for cause, did not give rise to a property right in her employment.

The federal district court therefore granted summary judgment in favor of the County.

On the first federal appeal, the Ninth Circuit noted that the trial proceedings were expedited, and that plaintiff's requests to conduct discovery had been denied. Plaintiff had argued that, because her position was not of a fixed or limited duration, because she was "knowingly treated as a regular employee," and because the County had retained her without complying with the salary ordinance's provisions for the extension of a temporary employee's appointment, she should be classified as a regular employee under the ordinance. The Ninth Circuit Court of Appeals characterized the County's argument harshly: "The employing county argues that because [plaintiff] held one of the 16 OAII positions designated as 'temporary positions' at the hospital where she worked, she was always a temporary employee, regardless of the actual characteristics of her employment. In other words, the [C]ounty argues, [plaintiff] was a temporary because the [C]ounty says she was." The Ninth Circuit held that mere say-so was not enough: "[S]omething more than mere appellation by the employer is required to make an employee temporary."

The Ninth Circuit also construed *McGillicuddy, supra,* 133 Cal.App. 782, differently from the trial court, holding that *McGillicuddy* suggested that, if plaintiff could show that her position was " 'neither temporary in fact nor by the law of its creation,' she might not have been a temporary employee under

[the salary ordinance]." Summary judgment was not appropriate where there was a disputed issue of material fact.

Given that the trial proceedings had been expedited, the Ninth Circuit reversed the granting of summary judgment so as to afford plaintiff the opportunity to conduct discovery.

After an interval to permit plaintiff to conduct discovery, the district court again granted summary judgment in favor of the County, on the same basic grounds as before—plaintiff had not become a permanent employee.

On the second federal appeal, the Ninth Circuit stated, "A prior panel of this court concluded that [plaintiff] would prevail on [a due process property interest] claim so long as she was a 'regular' employee at the time of her termination. [Citations.] For the second time, this court is asked to determine whether [plaintiff] was a 'regular' or 'temporary' employee of the County . . . . [¶] The first panel to consider this question held that a genuine issue of material fact existed as to whether [plaintiff] was 'qualified' for regular employment within the County . . . . *No other deficiency in the record was identified.* The prior panel's holding that the 'qualification' question is determinative is the law of this case. . . . Disposition of this appeal therefore turns entirely on whether [plaintiff] was, in fact, 'qualified' for regular employment." (*Jenkins v. County of Riverside, supra,* 398 F.3d at pp. 1093–1094, italics added, fns. omitted.) The court held that the district court had construed the concept of "qualification" too narrowly, as requiring not only that plaintiff have passed the written examination and been placed on an eligibility list, but also that she was not "qualified" unless she also received an interview, and was selected as the successful candidate. Because plaintiff had passed the written examination several times, and been referred for interviews for a permanent position, it was permissible for the County to have hired her in one of the permanent positions for which she had applied; "[t]hat it would have been *permissible* to hire an applicant under the applicable rules is all that California law requires for an applicant to be considered 'qualified' for a permanent civil service position." (*Id.* at p. 1097.) The court held that, because plaintiff "was 'qualified' for a regular position under California law, for purposes of this case she was a de facto 'regular' employee within the meaning of [the salary ordinance] at the time she was summarily terminated." (*Id.,* at p. 1098.) She therefore had a property right in continued employment and her summary termination with notice and a hearing was unlawful under title 42 United States Code Annotated section 1983. Plaintiff was thus entitled to summary judgment in her favor on the due process question.

On the first appeal, the reason for reversal was that plaintiff had been denied discovery to develop evidence on the disputed issue whether she was "qualified" for a permanent position with the County. Implicit, however, is

the Ninth Circuit's conclusion that the district court had misinterpreted California law. The issue of whether plaintiff is "qualified" for a permanent position is purely a legal issue. If the Ninth Circuit had agreed with the district court's statutory construction, it would probably not have reversed the order granting summary judgment for the County. Further factual development would in essence have been irrelevant. Plaintiff's "qualification" for a regular, permanent position, would be rendered irrelevant if, in reality, she always remained a temporary employee, and the category of ongoing temporary employee is a proper or legitimate classification. The reversal of the motion for summary judgment, then, implicitly reversed more than the ruling that plaintiff had not shown she was "qualified" to be a regular employee. In other words, the first Ninth Circuit appeal impliedly determined that the district court's statutory construction and analysis of California case law were also erroneous.

On the second appeal, the Ninth Circuit thus treated the statutory construction issues as already decided in plaintiff's favor, as "[n]o other deficiency in the record [had been] identified," in the earlier appeal. The sole issue that the second appellate opinion addressed was "whether [plaintiff] was, in fact, 'qualified' for regular employment." The court decided that, simply because plaintiff had shown she was "qualified" for a permanent position, she had demonstrated that "she was a de facto 'regular' employee within the meaning of [the salary ordinance]."

The question at issue—whether plaintiff was a temporary or a regular employee—was decided in the federal proceedings. That issue was actually litigated. The County had the opportunity to fully and fairly litigate that question, and the issue was necessarily decided in the federal case. The parties are the same in both actions. Although the Ninth Circuit's second opinion had not yet been rendered at the time the state trial court granted the County's motion for summary judgment here, it has been filed and has become final during the pendency of this appeal (motion for summary judg. granted in state court on Aug. 23, 2004; second 9th Cir. opn. (Feb. 9, 2005) became final on or after May 3, 2005, on denial of County's second petn. for rehg.).

### 3. *Collateral Estoppel Does Not Apply Here*

Even though the issue decided by the Ninth Circuit—whether plaintiff was a temporary or a regular employee—is the same in both cases, the federal decision on this question is not binding on this court.

It is questionable whether the doctrine of collateral estoppel applies to pure questions of law. (*People v. Conley* (2004) 116 Cal.App.4th 566, 571

[10 Cal.Rptr.3d 477]; see also *In re Pedro C.* (1989) 215 Cal.App.3d 174, 181 [263 Cal.Rptr. 428].) The issue here—interpretation of the salary ordinance—was one of law. (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531 [85 Cal.Rptr.2d 257, 976 P.2d 808].) "We have also recognized that public policy considerations may warrant an exception to the claim preclusion aspect of res judicata, at least where the issue is a question of law rather than of fact. [Citations.]" (*People v. Barragan* (2004) 32 Cal.4th 236, 256 [9 Cal.Rptr.3d 76, 83 P.3d 480].)

We believe the Ninth Circuit's construction of California law is wrong. The Ninth Circuit's opinion in the federal case was driven by its view that plaintiff "was a temporary because the [C]ounty says she was." The source of this problem was *McGillicuddy*, in which the city had tried to designate the employees' disputed status as "temporary," when no such classification existed in the authorizing legislation. The sole reason to claim that the employees were "temporary" was the city's post hoc rationalization: i.e., because the city "said so." The situation here is wholly different. As we have previously indicated, the constitutional power to provide for the number, compensation, tenure and appointment of county employees belongs solely to the Board of Supervisors. (Cal. Const., art. XI, § 1, subd. (b); see *Hicks v. Board of Supervisors, supra,* 69 Cal.App.3d 228.) Whether an employee can be classified differentially as a regular or as a permanent employee depends entirely on what the authorizing legislation provides. Here, the salary ordinance expressly creates both regular and temporary positions. The standard of classification established by the salary ordinance " 'is not arbitrary, unreasonable, or unjust.' " This is not a case in which the employee is called temporary merely because the governmental entity has applied an appellation without foundation. Here, the County is entitled to "say so" because it has provided for that classification beforehand, within the salary ordinance itself. That is the essence of the County's legitimate exercise of its constitutionally granted legislative powers.

For this reason, we conclude that the doctrine of collateral estoppel should not be applied here to preclude litigation of the proper interpretation of the County's salary ordinance.

### 4. *The Motion Was Not Decided on an Improper, Unraised Ground*

Lastly, plaintiff contends that the trial court granted summary judgment based on an issue not addressed by the parties. Plaintiff argues that, had she been given notice of the issue, "she could have presented an argument that she was not, in fact or by law, a 'temporary' employee." The record plainly

demonstrates, however, that both plaintiff and the County did address the critical issue of plaintiff's status as a temporary or a permanent employee under the salary ordinance. The County's separate statement of undisputed facts, Nos. 5 through 9, asserts expressly that plaintiff was a "temporary" employee and was terminated for exceeding the allowable hours. Plaintiff, in her responsive separate statement, admitted that it was "[u]ndisputed that plaintiff was designated a 'temporary' employee. Whether she was indeed a 'temporary' employee is a legal conclusion currently under consideration by the Ninth Circuit Court of Appeals. . . ." Plaintiff did in fact present the argument that she was a "regular" rather than a "temporary" employee. Far from being an issue not presented by the motion or argued by the parties, the question of plaintiff's "temporary" status was the essence of the underlying summary judgment motion.

Plaintiff argues that, had she been apprised of the true basis of the trial court's ruling, "she could have pointed to evidence in the record to establish that she was qualified and eligible to be appointed to a regular position: she had applied for a 'regular' position, had taken the test and passed it, was on the County's list of applicants qualified and eligible to be appointed to a regular position." Again, contrary to plaintiff's argument, the record clearly demonstrates that she *did* submit evidence on this very point. In her supplemental separate statement of undisputed facts, she stated, "4. Plaintiff was on the list of applicants certified as eligible for appointment to the position of regular OA I/II in effect in May, 1998," and "7. On May 22, 1998, plaintiff was invited to interview for a vacant OA II position in the Department of Health." The court below did not dispute, and instead concluded, that plaintiff *had* demonstrated that she was "qualified" for a regular OA II position. The court's decision of the summary judgment motion, on the ground that plaintiff was, and remained, a temporary employee, in no way deprived plaintiff of the ability to argue the issue of qualification.

The claim that the summary judgment motion was improperly decided, because it was decided on an issue not addressed by the parties, must be rejected. Both parties were well aware of, and presented evidence and argument about, the critical issue which formed the basis for the court's ruling. No reversal of the ruling on summary judgment is required on the alleged basis that the motion was decided on a ground not raised.

None of plaintiff's supposed grounds of attack on the ruling below is meritorious. Plaintiff was unable to show that the County was not entitled to judgment in its favor, either factually, legally, or procedurally.

## DISPOSITION

For the reasons stated, the judgment in favor of the County is affirmed. The County shall recover its costs on appeal.

Ramirez, P. J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 2, 2006, S143587. George, C. J., did not participate therein.