Filed 11/3/15  Sproal v. City of Colton CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SHARI SPROAL, | |
| Plaintiff and Appellant, | E062370 |
| v. | (Super.Ct.No. CIVDS1301438) |
| CITY OF COLTON, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Brian S. McCarville, Judge.  Affirmed.

Law Offices of Joseph Y. Avrahamy and Joseph Y. Avrahamy for Plaintiff and Appellant.

Best Best & Krieger, Cynthia M. Germano, and Elizabeth A. Han for Defendant and Respondent.

1

Plaintiff and appellant Shari Sproal worked for defendant and respondent City of Colton's (the City) police department as an animal control officer. In 2013, the City terminated her employment after conducting an internal affairs investigation and determining that she had violated department policies by, among other things, neglecting her duties and behaving inappropriately towards her superiors.

Plaintiff sued the City, alleging that she was disabled due to stress and that the City failed to accommodate her disability. She also alleged that the City had wrongfully terminated her employment based on her disability and use of medical leave. The trial court granted the City's motion for summary judgment and entered judgment in favor of the City. We affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Plaintiff's Employment History*

Plaintiff worked in the City's police department for over 25 years. She began working for the department in 1987 as a police dispatcher. In 1995 she was demoted to a records clerk following a suspension for carrying a concealed loaded handgun in a vehicle and an internal investigation finding that she had threatened and harassed fellow employees. A few years later, plaintiff was promoted back to dispatcher, a position she kept until 2003, when she became an animal control officer (ACO). As an ACO, plaintiff's duties included responding to animal-related calls, writing attack reports and

2

citations, transporting animals to shelters, registering service dogs, distributing fliers for the licensing program, and sending out dog license renewal notices.

In 2003 when plaintiff started working as an ACO, the City had two ACOs, but in 2009 it eliminated the other position due to budget cuts. Being the only ACO in the department, plaintiff felt overworked and suffered from stress and anxiety. Beginning in 2009, the amount of sick time plaintiff took each year increased. Plaintiff complained to her supervisor that she was "overworked and burned out." She made similar comments to the City's Chief of Police, Steve Ward. Chief Ward testified at his deposition that he had known plaintiff for 20 years, that they had a good relationship, and that she cared about her job. After she became the only ACO, she frequently expressed to him that she was frustrated with her workload. Chief Ward testified that he "truly wanted to help" plaintiff by hiring another ACO and that he tried to obtain approval for another position every time the budget was under consideration.

B. *The May 8, 2012 Incident and Plaintiff's Medical Leave*

On May 8, 2012, a police dispatcher and a records clerk received a call regarding an injured cat. Plaintiff's account of her response to this call differed from the accounts of the various City employees who were interviewed as part of the internal affairs investigation. It is undisputed that in responding to the call, plaintiff was perceived as acting rudely and inappropriately towards the dispatcher, the records clerk, plaintiff's supervisor, Sergeant McCann, and a local business owner who was present when plaintiff

3

arrived on the scene. In his deposition, Sergeant McCann testified that plaintiff's behavior on May 8 was "definitely inappropriate." During his interview for the investigation, Sergeant McCann stated that plaintiff had called him before responding to the call, and had cursed at him and questioned his judgment for allowing the call to hold for her instead of assigning it to another officer.

As soon as plaintiff arrived at the scene of the call, she and a local business owner got into an argument about the dog that had attacked the cat. Less than ten minutes later, the business owner called the police department to request assistance in handling plaintiff. When Sergeant McCann arrived on the scene he informed plaintiff that she had acted inappropriately towards him and her coworkers and that they would discuss her conduct later. In her declaration, plaintiff states that she "felt so overwhelmed from this event, as well as an accumulation of past events that had been building up," that she went home sick as soon as she was finished responding to the call. Plaintiff admitted in her deposition that she had a confrontation with the business owner and that she had yelled at him.

The next day, May 9, 2012, plaintiff's personal physician placed her on medical leave "due to work related stress." The day after that, plaintiff filed a worker's compensation claim for stress and anxiety. Plaintiff's original stress leave was from May 9 to July 5, 2012, but her physician extended her leave to August 15, 2012.

In her second amended complaint, plaintiff alleged that during her leave she "left a cell phone message for Chief Ward to discuss an accommodation which would allow her to work with assistance." However, plaintiff testified in her deposition that her voice message simply asked Chief Ward to return her call so they "could figure out a way for [her] to come back to work" and she could "do [her] job efficiently [and] effectively." Chief Ward testified that he did not return plaintiff's call or speak with her during her medical leave because he has a policy that he does not meet with employees while they are on leave.

In her declaration supporting her opposition to the City's summary judgment motion, plaintiff states that she also asked her association president, Officer Randolf, to set up a meeting with Chief Ward regarding accommodations during her medical leave. However, Officer Randolf testified at his deposition that when plaintiff asked him to set up a meeting she proposed hiring an additional ACO and did not mention any accommodations or work restrictions. Plaintiff attached to her declaration an e-mail that she sent to another officer while she was on leave.[1] In the e-mail, plaintiff explains that she thought the department was going to hire another ACO and that she had been stressed from doing the work of two ACOs. She concludes by stating that she hopes to have a

---

[1] Plaintiff claims that she sent this e-mail to Officer Randolf, but his name does not appear as a recipient in the copy of the e-mail plaintiff attached to her declaration.

meeting to find "a solution to [her] work issues" so that she can "run the ACO program effectively and properly." The e-mail does not mention a disability or accommodation.

C.      *The Internal Affairs Investigation and Plaintiff's Return from Leave*

In July 2012, while plaintiff was still on leave, Chief Ward authorized an internal affairs investigation as a result of plaintiff's conduct on May 8, as well as allegations that she had neglected her duties before going on leave and had a history of interacting inappropriately with other department employees. Sergeant Michael Hadden was assigned to conduct the investigation. He interviewed eight department employees, including plaintiff, and reviewed department policies, plaintiff's file, and telephone and radio recordings.

The investigation lasted several weeks. Sergeant Hadden concluded that plaintiff had a history of inappropriate behavior and neglect of duties that amounted to a violation of four separate department policies. Specifically, he concluded that plaintiff had: failed to prepare and mail out license renewal letters; stopped performing paid animal pick-ups without authorization; stopped responding to apartment complex calls without authorization; and had interacted improperly with her supervisor, other department employees, and a member of the public during the May 8, 2012 incident. The investigation summarized plaintiff's disciplinary history, which includes: a demotion in 1995 following a misdemeanor conviction for carrying a concealed loaded handgun and an internal investigation finding that plaintiff had threatened and harassed her coworkers;

6

a counseling memorandum in 2008 for yelling at a sergeant during a meeting and violating the department's decorum policy; a written reprimand in 2009 for neglect of duties and unprofessional behavior when she delayed her response to two injured animal calls for over two hours each and complained that a community service officer should have handled the calls; and a 2010 employment evaluation, which observed that she responded inappropriately to supervisory direction, was frequently rude to customers, and ignored the chain of command when she did not get her way.

Plaintiff returned to work on August 15, 2012, while the investigation was ongoing. Plaintiff did not request any accommodations, stress related or otherwise. The note from her worker's compensation physician, dated August 7, 2012, stated that she is "Discharged From Care With No Future Disability Expected" and that she can return to her "Regular Work." Under a section entitled "Subjective Complaints" he wrote that plaintiff was "still stressed out in that the City has not changed anything at her department." Under "Objective Findings," the physician wrote that plaintiff experienced "stress and anxiety while telling her story" and that she was "very emotional." The physician's conclusion was that plaintiff "may return to work on 8/7 as Dr. Masson has stated she does not feel this case is work related." Chief Ward placed plaintiff on paid administrative leave until the investigation was complete.

Pursuant to department policy, two lieutenants from the Internal Affairs Division and the support services manager reviewed the facts of the investigation (the

7

Commanders Review). They agreed with Sergeant Hadden's conclusion sustaining the allegations against plaintiff and they unanimously recommended to Chief Ward that the City terminate plaintiff's employment because she posed "a continual performance and behavior issue that has not been corrected in spite of various attempts to remedy [her] conduct."

After considering Sergeant Hadden's conclusions and the Commanders Review recommendation, Chief Ward determined that termination was appropriate and he sent plaintiff a Notice of Proposed Termination. Chief Ward stated in his declaration that he found plaintiff's conduct on May 8, 2012 "egregious" and that he had not been aware of her disciplinary history. He stated that he "felt that [he] had always supported her . . . and given her every possible chance to succeed" and that he was "appalled" when he learned of her disciplinary history. Based on the investigation findings, he concluded that plaintiff had been given numerous opportunities to correct her improper behavior, that she was either unwilling or unable to do so, and that it had "gotten to the point of being intolerable."

During her predisciplinary hearing, plaintiff attempted to justify her behavior, but at no point did she argue or suggest that her proposed termination was based on her medical leave, or the fact that she was disabled. Because plaintiff failed to present any evidence or argument that the violations discussed in the investigation summary had not

8

occurred, Chief Ward upheld his previous decision to terminate plaintiff's employment. He issued a Notice of Termination to plaintiff on March 14, 2013.

D.    *Procedural History*

Plaintiff sued the City, alleging failure to accommodate her disability, failure to engage in an interactive process, age and disability discrimination, and retaliation in violation of the Fair Employment and Housing Act (FEHA).  (Gov. Code, § 12900 et seq).  She also alleged retaliation for taking medical leave in violation of the California Family Rights Act (CFRA).  (Gov. Code, § 12945.2.)  The City filed a motion for summary judgment as to all of plaintiff's claims and filed seven evidentiary objections to statements in plaintiff's declaration in support of her opposition to summary judgment.

The trial court granted the summary judgment motion in its entirety and sustained all of the City's evidentiary objections.  Plaintiff appeals the court's summary judgment ruling as to all but two of her claims.[2]  She also appeals two of the court's evidentiary rulings.

---

[2]  Plaintiff is not challenging the court's summary adjudication of her FEHA age discrimination and retaliation claims.

9

II

ANALYSIS

A.     *Standard of Review*

A motion for summary judgment must be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  "We review an order granting or denying a motion for summary judgment de novo, examining the evidence before the trial court.  We independently determine the effects of that evidence as a matter of law."  (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 601 [Fourth Dist., Div. Two].)  " 'We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence.' "  (*Arteaga v. Brink's*, *Inc.* (2008) 163 Cal.App.4th 327, 342 (*Arteaga*).)

B.     *Failure to Accommodate and Failure to Engage in an Interactive Process*

Plaintiff's second amended complaint alleged that she was disabled due to stress, that the City failed to accommodate her disability, and that the City also failed to engage in the interactive process required by FEHA.  These claims fail as a matter of law because plaintiff returned to work from medical leave without restrictions and she did not request any disability accommodations.

FEHA protects employees from discrimination or adverse employment actions based on a "physical or mental disability or medical condition."  (Gov. Code, § 12940,

10

subd. (a); see also, e.g., *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1002.)  Under FEHA, it is unlawful for an employer to fail to provide "reasonable accommodation" to enable an employee with a disability to perform the essential functions of her job.  (Gov. Code, § 12940, subd. (m).)  It is also unlawful for an employer to fail to "engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations."  (Gov. Code, § 12940, subd. (n).)

While FEHA imposes these duties on the employer, the "interactive process of fashioning an appropriate accommodation lies primarily with the employee."  (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 443 (*King*).)  In order to succeed on an accommodation or interactive process claim, a plaintiff must "tender a *specific request* for a necessary accommodation."  (*Ibid.*, quoting *Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1384, italics added.)  " ' "[An] employee can't expect the employer to read [her] mind and know [s]he secretly wanted a particular accommodation and sue the employer for not providing it.  Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge." ' "  (*King*, *supra*, at p. 443, quoting *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 954.)

In *King*, the plaintiff was on medical leave for four months due to a blood disorder.  (*King*, *supra*, 152 Cal.App.4th at p. 434.)  Upon returning to work, he did not make a request for an accommodation nor did he inform his supervisors that he was

11

unable to work the hours he had previously worked.  (*Id.* at p. 443.)  His physician's note

released him to perform "his regular duties."  (*Ibid.*)  In opposition to his former

employer's summary judgment motion, the plaintiff argued that the employer was on

notice that he needed an accommodation because he had complained to his division

manager about his workload and the manager told plaintiff to discuss the issue with his

direct supervisor.  (*Id.* at p. 444.)  The court rejected this argument, finding the plaintiff's

deposition testimony regarding his conversation with his direct supervisor "vague at

best."  (*Ibid.*)  The court concluded that the plaintiff's FEHA claim failed as a matter of

law because the undisputed facts did "not establish that he . . . made the kind of specific

request for a modified work schedule required to trigger an employer's duty to provide

accommodation."  (*Ibid.*)

Here, plaintiff admitted that her physician had "unconditionally" released her to

work and that when she returned from leave on August 15, 2012, she did not have any

conversations with anyone in the department about requesting an accommodation.  These

undisputed facts are fatal to plaintiff's accommodation and interactive process claims.

Even if we assume that the stress plaintiff was suffering as a result of her workload

qualifies as a physical or mental disability under FEHA, her claims fail as a matter of law

because the City had no way of knowing she was disabled or needed accommodation.

Plaintiff argues that the City was on notice that she was disabled and needed

accommodation because she had taken several stress-related absences in the past and had

12

complained to her supervisor and Chief Ward that she was "overworked and burned out." We disagree. Although FEHA's interactive process does not mandate the use of any "magic words" to necessitate accommodation, the statute requires more than vague complaints about workload. (See *King*, *supra*, 152 Cal.App.4th at p. 444.) Put simply, complaints about stress and workload do not amount to a request for an accommodation. "FEHA does 'not guarantee employees "a stress-free working environment." ' " (*Arteaga*, *supra*, 163 Cal.App.4th at p. 344.) A plaintiff must have a disability and actually raise the issue of accommodations or work restrictions with her employer in order to trigger an employer's accommodation duties.

Plaintiff also argues that the City was on notice because her physician's note stated that she was stressed and "remained ill." Plaintiff mischaracterizes the contents of the note, which states that, subjectively, plaintiff was "still stressed out." Significantly, the note also stated that plaintiff could return to "Working Regular Duty" and that even though plaintiff was "very emotional," her stress was not work related. Nothing about this note would put the City on notice that plaintiff was disabled and needed an accommodation.

We also reject plaintiff's attempt to save her claims by asserting that she contacted Chief Ward during her medical leave and "sought an accommodation which would have transferred certain administrative duties to other employees, such as renewal or licenses, so that she could concentrate on handling animal calls." The evidence plaintiff relies on

13

to make this argument is a statement from her declaration that the trial court excluded as inadmissible. As we conclude below, the court's exclusion of that evidence was proper because it is simply a statement of what plaintiff would have said to Chief Ward had she talked to him. (See part II.D, *post*.) The undisputed evidence is that plaintiff never spoke with Chief Ward during her leave. Plaintiff admitted in her deposition that what had in fact occurred was that she left a voice message for Chief Ward asking him to call her back so they "could figure out a way for [her] to come back to work" and she could "do [her] job efficiently [and] effectively." Plaintiff cannot create a triable issue by making a declaration that contradicts her prior deposition testimony. (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1087.)

Plaintiff also claims that she "tried to have the association president, Officer Randolf meet with Chief Ward to discuss an accommodation." Again, plaintiff is relying on a statement from her declaration that the trial court properly excluded. (See part II.D, *post*.) As mentioned, Officer Randolf testified at his deposition that when plaintiff contacted him to set up a meeting with Chief Ward, she did not mention accommodations or work restrictions but instead proposed hiring an additional ACO. As for the e-mail she sent during her medical leave, it does not include any mention of a disability or a need for accommodation. Instead, the e-mail describes plaintiff's workload and her understanding that the department was going to hire another ACO. She concludes the e-mail by stating that she hopes to have a meeting so they can "find[] a solution to [her] work issues" so

14

that she can "run the ACO program effectively and properly." Far from helping her prove a request for accommodation, this e-mail demonstrates that plaintiff was seeking structural changes in her department.

We conclude that plaintiff's first cause of action for failure to accommodate and her second cause of action for failure to engage in an interactive process fail as a matter of law.

C.     *Disability Discrimination and Retaliation for Taking Medical Leave*

Plaintiff alleges that neglect of duties and disciplinary history were merely a pretext for her termination. She alleges that the real reason she was fired was because she was disabled and had taken medical leave.

California courts generally employ the burden-shifting *McDonnell Douglas*[3] test to resolve motions for summary judgment in discrimination and retaliation cases. (*King, supra,* 152 Cal.App.4th at pp. 432-433, fn. 2; *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 476-477.) Under this test, the plaintiff has the initial burden of establishing a prima facie case of discrimination or retaliation. If the plaintiff does so, the burden shifts to the employer to produce admissible evidence that the adverse employment action was taken for a legitimate, nondiscriminatory, or nonretaliatory reason. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355-356.) If the employer

---

[3] *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.

15

can show a legitimate reason, "the discharged employee seeking to avert summary judgment must present *specific and substantial responsive evidence* that the employer's evidence was in fact insufficient or that there is a triable issue of fact material to the employer's motive." (*King*, *supra*, at p. 433, italics added.)

When determining whether the City has met its burden of proof, it does not matter whether plaintiff actually did commit the violations discussed in her Notice of Termination, as long as the City "honestly believed [s]he did." (*King*, *supra*, 152 Cal.App.4th at p. 433.) If the City can demonstrate a legitimate reason for plaintiff's discharge, plaintiff cannot simply show that the City's decision was "wrong or mistaken." (*Arteaga*, *supra*, 163 Cal.App.4th at p. 343.) Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [City's] proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer "that the employer did not act for the [asserted] non-discriminatory reasons." ' " (*Ibid.*)

Even assuming plaintiff can establish a prima facie case of discrimination or retaliation, her claims fail as a matter of law because the City made a sufficient showing of a legitimate reason for her discharge and she presented no responsive evidence demonstrating that the evidence was insufficient. Chief Ward stated that he authorized the internal affairs investigation based on allegations that plaintiff had behaved inappropriately toward her supervisors and had neglected her duties. Sergeant Hadden,

16

who conducted the investigation, testified that the scope of his inquiry was "the [May 8, 2012] incident and then anything that came up surrounding the incident." He testified that his inquiry concerned plaintiff's "performance" and that her use of sick time was never part of the investigation.

Nothing in the evidence submitted by the parties indicates that plaintiff's stress or use of sick time was a ground for terminating her employment. Rather, the evidence demonstrates that after several weeks of researching plaintiff's employment history, conducting interviews, and reviewing telephone records, the department lost confidence in her ability to do her job competently and to behave appropriately towards her fellow employees. Whether the outcome of the investigation was fair or whether plaintiff had justifiable excuses for her alleged behavior is not for us to determine. (*Guz v. Bechtel Naional, Inc.*, *supra*, 24 Cal.4th at p. 358 [the issue is discriminatory animus, not whether the employer's actions were "wise or correct"].) Indeed, plaintiff admitted in her deposition that she believed Sergeant Hadden was trustworthy and had accurately reported the interviews in the investigation summary.

Plaintiff contends that the timing of the internal investigation "supports a strong inference" of discrimination. We disagree. "[T]emporal proximity alone is not sufficient to raise a triable issue as to pretext" once the employer has offered evidence of a legitimate reason for the termination. (*Arteaga*, *supra*, 163 Cal.App.4th at p. 353.) The City produced sufficient evidence that the May 8, 2012 incident, not plaintiff's medical

leave, was the impetus for the internal investigation. The temporal proximity of the investigation and plaintiff's medical leave is simply a result of the fact that plaintiff left work *in response to* the May 8, 2012 incident.

Plaintiff also contends that the City had admonished her for her use of sick time in the past and that this is evidence of an illegal motive for firing her. To make this argument, plaintiff relies on statements in her own declaration regarding alleged comments from her supervisors about her use of sick time. The trial court sustained the City's objections to these statements and plaintiff does not challenge those rulings on appeal. In any event, a plaintiff's "subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*King*, *supra*, 152 Cal.App.4th at p. 433.)

We conclude that plaintiff's third cause of action for disability discrimination and her fifth cause of action for retaliation fail as a matter of law.

D.  *Evidentiary Objections*

A trial court's "wholesale adoption of [a party's] rulings on evidentiary objections" in summary adjudications is reviewed for abuse of discretion. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.) "Although it is often said that an appellate court reviews a summary judgment motion 'de novo,' the weight of authority holds that an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard." (*Ibid.*)

18

Plaintiff challenges two of the trial court's evidentiary rulings. The first ruling pertains to plaintiff's statement that during her medical leave she "called Chief Ward to discuss an accommodation . . . which would have transferred certain administrative duties, such as renewal of licenses, so that [she] could concentrate on handling animal calls." The court sustained the City's objection that this statement is irrelevant.

Contrary to plaintiff's conclusory assertion that her statement is "certainly relevant in a case for failure to accommodate," we conclude that the court's ruling is reasonable. The City argues that plaintiff's statement is irrelevant testimony about what she would have asked Chief Ward had she talked to him during her medical leave. We agree. Plaintiff's statement is not evidence of a request for accommodation, it is evidence of what her request *would have been*, had she ever made it.

The second challenged ruling applies to plaintiff's statement that she "tried to have the association president, Officer Randolf meet with Chief Ward to discuss accommodations" and that Officer Randolf "agreed to set up a meeting" which was "presumably scheduled for June 13, 2012 between Chief Ward, Officer Randolf and [another officer]." The court sustained the City's objection that this statement is, among other things, irrelevant. We conclude that the court's ruling was reasonable because, as with the previous statement, this statement is not evidence that plaintiff requested an accommodation. At most, it is evidence that she intended to. The undisputed evidence is that the meeting never occurred. Moreover, Officer Randolf, the association president,

19

testified that when plaintiff asked for a meeting with Chief Ward, she did not mention disability accommodations and he did not know that was a topic she wanted to discuss.

Neither of the court's evidentiary rulings constitutes an abuse of discretion.

## III

## DISPOSITION

The judgment is affirmed.  The City shall recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

KING
Acting P. J.

MILLER
J.