Filed 2/18/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re LONNIE LOREN KOCONTES | G051809 |
| on | (Super. Ct. No. S223602) |
| Habeas Corpus. | O P I N I O N |

Original proceedings; petition for a writ of habeas corpus to challenge an order of the Superior Court of Orange County, William Lee Evans (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.), and Gregg L. Prickett, Judges. Petition denied.

Law Offices of David M. Michael, David M. Michael and Edward M. Burch for Petitioner.

Tony Rackauckas, District Attorney and Seton B. Hunt, Deputy District Attorney, for Respondent.

1

No appearance for the Orange County Sheriff's Department, Respondent.

Lonnie Loren Kocontes filed a petition for writ of habeas corpus in the California Supreme Court. In his habeas corpus petition, Kocontes argues the trial court, Judge Gregg L. Prickett, erred by overruling his demurrer and denying his motion to dismiss the indictment because collateral estoppel prevented him from reconsidering Judge William Lee Evans's ruling granting his previous motion to dismiss. The Supreme Court ordered the Orange County Sheriff's Department to show cause before this court "why the relief prayed for should not be granted." As we explain below, Kocontes's contentions have no merit, and we deny his petition for writ of habeas corpus.

FACTS[1]

*Substantive Facts*

We provide only a brief discussion of the facts because of the limited nature of our review. In May 2006, Kocontes and his long-time partner, Micki Kanesaki, went on a Mediterranean cruise; they had a balcony room. Early one morning, Kocontes reported Kanesaki missing. Kocontes disembarked the ship, stayed in Italy for one evening, and returned to the United States. That day, the Italian Coast Guard recovered Kanesaki's body off the Italian coast. An Italian chief medical examiner conducted the autopsy while an Italian pathologist and a United States Army pathologist observed. The examiner concluded Kanesaki was strangled by one assailant and put in the water where she remained between 36 and 38 hours.[2]

---

[1] Kocontes requests we take judicial notice of the records in case Nos. G050582, G049056, and G048763. We grant his request. (Evid. Code, § 452, subd. (d).)

[2] In his habeas corpus petition, Kocontes states, "Because of bruising, in the thigh, the Italian medical examiner also concluded that an attempted sexual assault occurred." Kocontes does not provide a record reference for this statement. If he is referring to the Italian medical examiner's grand jury testimony, he is wrong. At the grand jury, the examiner actually testified there was bruising on her legs but there was "absolutely no[]" evidence she was sexually assaulted.

2

*Procedural Facts*

Italian authorities did not prosecute Kocontes for Kanesaki's death, and a federal grand jury did not indict him. A federal district court judge granted Kocontes's motion for summary judgment in a civil forfeiture action.

*Case No. 13CF0463*

In February 2013, a complaint charged Kocontes with murder for financial gain in *People v. Kocontes* (Super. Ct. Orange County, 2013, No. 13CF0463 (case No. 13CF0463). (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(1), all further statutory references are to the Pen. Code, unless otherwise indicated.) Kocontes filed a demurrer and a nonstatutory motion to dismiss and/or quash the complaint alleging lack of territorial jurisdiction of the state (§ 778a).[3] Kocontes filed an amended demurrer and a nonstatutory motion to dismiss alleging lack of territorial jurisdiction of the state (§ 778a). The prosecution opposed the motion, and Kocontes replied.

In April 2013, a first amended complaint (first complaint) charged Kocontes with the same offense and added that he committed preliminary acts in Orange County that culminated in the offense outside California (§ 778a). At a hearing the same day, Judge Kazuharu Makino overruled Kocontes's demurrer to the first complaint. Judge Makino declined Kocontes's request to consider his motion to dismiss for lack of territorial jurisdiction, ruling the proper time to consider that motion was at the

---

[3] The term "jurisdiction" can be problematic, i.e., personal jurisdiction, subject matter jurisdiction, and venue. (See *People v. Simon* (2001) 25 Cal.4th 1082, 1096, fn. 7; see, e.g., *Casey v. Superior Court* (1989) 207 Cal.App.3d 837, 843-845 [venue case referring to venue jurisdiction as territorial jurisdiction].) In this case, we are referring to the territorial jurisdiction of California, i.e. subject matter jurisdiction, to try Kocontes and not venue. (4 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Jurisdiction and Venue, §§ 2, 17, 22 & 46.)

preliminary hearing. Kocontes's arraignment was continued. The following month, the parties filed briefs on the issue of territorial jurisdiction.

On May 16, 2013, Judge Evans arraigned Kocontes—he waived his right to have his preliminary hearing within 10 days of his arraignment. The parties subsequently filed briefs on the issue of territorial jurisdiction. At the end of May, there was a three-day hearing before Judge Evans on Kocontes's motion to dismiss for lack of territorial jurisdiction based on stipulated facts. This hearing was separate from and preceded a preliminary hearing.

At the morning session of day three, Judge Evans granted Kocontes's motion to dismiss the case "for lack of territorial jurisdiction," concluding section 778a, subdivision (a), prohibited prosecution of a crime occurring outside the United States (Judge Evans's ruling). Judge Evans did not specify the statutory basis for the dismissal order. Noting he was sitting as a "magistrate," Judge Evans stated "none of [his] decisions constitute stare decisis or anything that binds any other judicial officer[,]" and he was "not at the level in which [his] rulings constantly bind some other judicial officer." After a discussion regarding whether the court must release Kocontes, the court granted the prosecution a short recess.

*Case No. 13CF1773*

During the recess, the prosecution filed a new complaint (second complaint) alleging the same charge and allegations in *People v. Kocontes* (Super. Ct. Orange County, 2013, No. 13CF1773 (case No. 13CF1773). When court resumed, Judge Evans ordered Kocontes released in case No. 13CF0463—no preliminary hearing was held in that case. When Judge Evans began arraigning Kocontes in case No. 13CF1773, Kocontes's defense counsel objected and orally moved to dismiss the second complaint on the same grounds as the first complaint. After a discussion whether the prosecution was prohibited from filing the second complaint, Judge Evans recessed for lunch and ordered counsel back that afternoon to litigate the issue. When the hearing

4

resumed, Judge Evans denied Kocontes's motion to dismiss the second complaint and remanded Kocontes.  Judge Evans granted Kocontes's motion to continue his arraignment.  About a week later, Kocontes filed a demurrer, and motions to strike and dismiss the second complaint.

*Case No. 13ZF0163*[4]

The grand jury heard testimony over two days in June 2013.  The grand jury returned a true bill of indictment alleging murder for financial gain with the jurisdictional allegation (§§ 187, subd. (a), 190.2, subd. (a)(1), 778a, subd. (a)).  Judge Prickett, sitting in Department C5, ordered the indictment filed in *People v. Kocontes* (Super. Ct. Orange County, 2013, No. 13ZF0163 (case No. 13ZF0163).

At a hearing three days later, Judge Prickett noted an indictment supersedes a complaint and the prosecution moved to dismiss the second complaint in case No. 13CF1773, which Judge Prickett granted (§ 1387, subd. (c)).  With respect to the indictment, Kocontes stated he intended to incorporate his previously filed demurrer, motion to strike, and motion to dismiss.  When Judge Prickett indicated the matter would "stay here" and inquired when the motion should be set, counsel asked, "You mean in your court?"  Judge Prickett indicated whether the case was assigned to another department for hearing on the motions was within the master calendar judge's discretion and he set the matter for the following week.  Judge Prickett stated he would consider Kocontes's motions from case No. 13CF0463.

A few days later, the prosecution opposed Kocontes's demurrer and motions.  Despite Judge Prickett's agreement he would consider Kocontes's motions from case No. 13CF0463 (motions on the first complaint before Judge Evans) in case No. 13ZF0163, Kocontes filed another demurrer, motion to strike the indictment, and motion to dismiss the case, a reply, and a supplemental memorandum.

---

[4]	On October 29, 2015, on our own motion, we augmented the record with the trial court minutes from case No. 13ZF0163.

5

At a hearing in June 2013, Judge Prickett indicated he had read and considered the moving papers and counsel argued the motion. Judge Prickett stated he intended to issue a written opinion. A few weeks later, the prosecution filed a supplemental brief, and Kocontes filed a reply.

On July 25, 2013, eight weeks after Judge Evans's ruling, the Orange County District Attorney appealed from the order granting Kocontes's motion to dismiss case No. 13CF0463, which became case No. G048763 on appeal.

At a hearing days later, Judge Prickett stated he had considered the briefs, and he informed counsel he overruled the demurrer and denied the motions to strike and dismiss the indictment. Judge Prickett issued a lengthy written order detailing his rulings (Judge Prickett's ruling). First, Judge Prickett ruled the prosecution could file the second complaint (§ 1387). Second, he ruled collateral estoppel did not apply because of the following: (1) Judge Evans's ruling was not final, and (2) assuming it was final, collateral estoppel did not apply because (a) jeopardy had not attached; (b) collateral estoppel did not apply to similar magistrate orders; (c) collateral estoppel had limited application to *legal* issues in criminal cases; and (d) policy reasons precluded collateral estoppel. Judge Prickett made his ruling while the appeal was pending in case No. G048763 and before Kocontes was arraigned on the indictment.

In September 2013, Kocontes filed and this court summarily denied his petition for writ of habeas corpus, mandate, and/or prohibition and request for immediate stay of Judge Prickett's ruling, alleging lack of territorial jurisdiction, the two-dismissal rule, and due process violations. (*Kocontes v. Superior Court* (Sept. 27, 2013, G049056) [nonpub. order].)

6

Judge Lance Jensen, sitting in department C5, arraigned Kocontes on the indictment on November 8, 2013.  Kocontes pleaded not guilty and denied the allegation.[5]  Judge Jensen assigned the case to Judge James A. Stotler.

In December 2013, Kocontes filed, inter alia, the following:  (1) motion to set aside the indictment pursuant to section 995 and due process, alleging insufficient probable cause and errors in the grand jury proceedings; and (2) motion to dismiss the indictment for lack of territorial jurisdiction.  The prosecution opposed the motions, Kocontes filed replies, and the prosecution filed a response.  In August 2014, Judge Stotler denied Kocontes's motion to set aside the indictment (§ 995).  Judge Stotler did not rule on Kocontes's motion to dismiss the indictment for lack of territorial jurisdiction, and based on our review of the record, that motion is still pending.

In August 2014, Kocontes filed a petition for writ of habeas corpus, mandate, and/or prohibition of Judge Stotler's ruling alleging errors in the grand jury proceedings.  This court summarily denied the petition.  (*Kocontes v. Superior Court* (Aug. 28, 2014, G050582) [nonpub. order].)

In early October 2014, after the district attorney failed to file a reply brief and the matter was set for oral argument, the district attorney filed a notice of abandonment of its appeal of Judge Evans's ruling in case No. G048763.  This court dismissed the appeal.  (*People v. Kocontes* (Oct. 6, 2014, G048763) [nonpub. order].)

In December 2014, Kocontes filed a petition for writ of habeas corpus, mandate, and/or prohibition alleging collateral estoppel barred Judge Prickett from reconsidering Judge Evans's ruling.  This court summarily denied the petition.  (*Kocontes v. Superior Court* (Dec. 24, 2014, G051135) [nonpub. order].)

---

5          Kocontes mistakenly states he was arraigned on June 26, 2013.

In January 2015, Kocontes filed a petition for writ of habeas corpus in the California Supreme Court, essentially the same habeas corpus petition he filed with this court in December 2014, and which we denied. The only issue Kocontes raises in his habeas corpus petition is collateral estoppel. However, in his petition he states, "If, for some reason, this Court were to conclude that collateral estoppel does not bar this prosecution, then it is respectfully requested that this Court decide the merits of the jurisdictional issue." He makes the same request in two other places citing to interests of judicial economy. However, Kocontes does not discuss the merits of the jurisdictional issue in his petition (and he does not discuss the election of remedies rule articulated in *Anderson v. Superior Court* (1967) 66 Cal.2d 863 (*Anderson*). Kocontes requests the Supreme Court issue an order to show cause (OSC), release him on his own recognizance or set reasonable bail, and grant the habeas corpus petition thereby dismissing the indictment and discharging him.

The following month, the district attorney filed an informal response in which it argues collateral estoppel is inapplicable. The district attorney adds Kocontes requests the Supreme Court address the merits of the jurisdictional issue; the district attorney does address the merits.

The next month, Kocontes filed an informal reply. After addressing the collateral estoppel issue, Kocontes asserts the Supreme Court should not address the merits of the jurisdictional issue, asserting he did not invite the court to do so. Relying on the fact he did not address the merits of the jurisdictional issue in the habeas corpus petition, Kocontes adds he requested the court address the issue "through orderly procedure if and only if the present writ petition (based on collateral estoppel) was denied." Nevertheless, Kocontes addresses the merits of the jurisdictional issue out of an abundance of caution.

8

On April 22, 2015, the California Supreme Court issued an order which stated: "The Orange County Sheriff's Department is ordered to show cause before the Court of Appeal, Fourth Appellate District, Division Three, when the matter is placed on calendar, why the relief prayed for should not be granted." The Supreme Court ordered the return to be filed on or before April 24, 2015, two days later. On April 29, 2015, acknowledging the error, the Supreme Court ordered the return filed by May 22, 2015, but not before Kocontes filed a motion, dated April 27, 2015, requesting we grant his habeas corpus petition because the district attorney did not file a return within the initial and erroneous two-day deadline.

The following month, the district attorney filed a return and accompanying exhibits. In its return, the district attorney denies the habeas corpus petition's allegations, denies Kocontes is unlawfully incarcerated, and denies collateral estoppel applies. The distict attorney admits Kocontes is in custody because he was indicted and asserts California has territorial jurisdiction. After arguing collateral estoppel does not apply, the district attorney again contends Kocontes alternatively requests we address the merits of the jurisdictional issue—it again addresses the merits of that issue. The district attorney does not cite to *Anderson, supra,* 66 Cal.2d 863, or address whether its election of remedies was timely.[6]

---

6       At oral argument in November 2015, the district attorney sought to distinguish *Anderson*, relying on *Anthony v. Superior Court* (1980) 109 Cal.App.3d 346.

Kocontes filed a traverse and accompanying exhibits.[7]  In his traverse,

Kocontes argues the following:  (1) the district attorney's admission of material facts

entitles him to relief; (2) collateral estoppel applies based in part on *Anderson* and the

prosecution's untimely election of remedies; and (3) citing to the fact he did not discuss

the merits of the jurisdictional issue in his habeas corpus petition, this court should not

reach the merits of the jurisdictional issue, although he again addresses the merits out of

an abundance of caution.

On July 31, 2015, this court invited the Orange County Sheriff's

Department to file a formal written return.  We also denied Kocontes's request for bail or

release on his own recognizance, and stayed further proceedings.  Later, the Orange

County Sheriff's Department declined our invitation to file a return.

DISCUSSION

*I. Nature of Our Review*

Before we begin, we must clearly state the issues we are and are not

addressing in this habeas corpus petition.  We address the collateral estoppel issue below.

However, we will not address the territorial jurisdiction issue because Kocontes did not

raise it in his habeas corpus petition.

"'The court determines *on the basis of the allegations of the original*

*petition . . .* , as well as the supporting documentary evidence and/or affidavits, which

should be attached if available, whether a prima facie case entitling the petitioner to relief

if the allegations are proven has been stated.  If so, the court issues an order directing the

---

[7]        In his traverse's table of contents, Kocontes states, "Falsities perpetuated by
a *corrupt* district attorney's office that form the basis of the pending shameful state
criminal action against petitioner." (Capitalization omitted; italics added.)  "[A] reminder
to counsel—all counsel, regardless of practice, regardless of age—that zealous advocacy
does not equate with 'attack dog' or 'scorched earth'; nor does it mean lack of civility.
[Citations.]  Zeal and vigor in the representation of clients are commendable.  So are
civility, courtesy, and cooperation.  They are not mutually exclusive." (*In re Marriage of
Davenport* (2011) 194 Cal.App.4th 1507, 1537.)

respondent to show cause why the relief sought should not be granted based on those allegations. When an [OSC] does issue, it is limited to the claims raised in the petition and the factual bases for those claims alleged in the petition. It directs the respondent to address only those issues.'" (*In re Reno* (2012) 55 Cal.4th 428, 458-459, fn. 15 (*Reno*).)

Here, the only issue Kocontes raises in his habeas corpus petition is collateral estoppel. He does not address the merits of the territorial jurisdiction in his petition. In his informal response to the Supreme Court, Kocontes stated he asks the court to address the merits of the territorial jurisdiction issue only if the court rejects his collateral estoppel argument and "through orderly procedure." And he acknowledges his habeas corpus petition does not address the merits of the issue. In his traverse, he requests this court not address the merits of the territorial issue, although he addresses the merits out of an abundance of caution.

The *Reno* court spoke clearly when it said that when a court issues an OSC, "it is limited to the claims raised in the petition and the factual bases for those claims alleged in the petition." (*Reno, supra,* 55 Cal.4th at pp. 458-459, fn. 15.) Kocontes did not raise and argue the merits of the territorial issue in his habeas corpus petition, and he did not include the factual bases for the territorial jurisdiction claim. Thus, we limit our discussion to collateral estoppel.

## II. *Collateral Estoppel/Issue Preclusion*

Kocontes argues the prosecution's dismissal of its appeal of Judge Evans's ruling in case No. G048763, which occurred after Judge Prickett's ruling on the indictment, acts as collateral estoppel of that ruling and prohibits his prosecution for Kanesaki's death. We disagree.

"We have generally applied collateral estoppel 'if (1) the issue necessarily decided at the previous trial is identical to the one which is sought to be relitigated; if (2) the previous trial resulted in a final judgment on the merits; and if (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the

11

prior trial.' [Citations.]" (*People v. Santamaria* (1994) 8 Cal.4th 903, 916.) We review the applicability of collateral estoppel de novo. (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 618 (*Jenkins*).)

Because we review the issue of collateral estoppel de novo, we need only determine whether its elements are satisfied and not the reasons for Judge Prickett's ruling. The only element in dispute is the second element, finality. Before we address that element, and Kocontes's contentions, we briefly discuss one preliminary issue—does collateral estoppel apply to purely legal issues in criminal cases.

## A. Collateral Estoppel of Legal Issues in Criminal Cases

"It is debatable whether the doctrine of collateral estoppel even applies to pure questions of law." (*In re Bush* (2008) 161 Cal.App.4th 133, 146, fn. 6; *Jenkins, supra,* 138 Cal.App.4th at p. 621, *People v. Conley* (2004) 116 Cal.App.4th 566, 571; *In re Pedro C.* (1989) 215 Cal.App.3d 174, 181.) However, *People v. Howie* (1995) 41 Cal.App.4th 729 (*Howie*), provides some authority for the conclusion collateral estoppel does apply to legal issues in criminal cases, although in a different procedural context.

In that case, defendant pleaded guilty to robbery in 1973, and in 1979, he was charged with another offense and the prosecution sought to enhance his punishment on the basis of the 1973 robbery. (*Howie, supra,* 41 Cal.App.4th at p. 734.) Defendant successfully argued the 1973 robbery was invalid and the prosecution did not appeal. Defendant was charged with another offense in 1982 and, again, the prosecution sought to enhance the punishment based on the 1973 robbery. Again defendant prevailed in striking the 1973 robbery, and this time it was affirmed on appeal. The prosecution once again tried to use the 1973 offense to enhance punishment for an offense occurring in 1993. (*Id.* at pp. 734-735.) The court held the prosecution could not continue to relitigate the validity of the 1973 ruling that was never appealed: "[The 1973 ruling] determined a matter of substantial right on an *issue of law*, and the People were a party to

12

that proceeding. It was a determination based on the merits. The People did not challenge the trial court's ruling on appeal. The ruling was final. Subsequently, the appellate court prohibited the People from relitigating the validity of the prior conviction. The People are bound by these determinations." (*Id.* at p. 736, italics added.)

Although Judge Prickett concluded it was doubtful collateral estoppel applied to legal issues in criminal cases as an alternative basis for denying Kocontes's motions, the district attorney does not assert this as a basis for denying Kocontes's habeas corpus petition. Assuming without deciding collateral estoppel applies to purely legal issues in criminal cases, we conclude the elements of collateral estoppel were not satisfied here.

### B. Finality

#### 1. Section 1387

"It is, of course, the rule in this state that the magistrate's order dismissing a felony complaint is not a bar to another prosecution for the same offense, either by filing a subsequent complaint [citations], or by seeking a grand jury indictment [citations]. Even a dismissal in the superior court following an order setting aside an information or indictment is no bar to a future prosecution for the same offense. (. . . § 999; see also § 1387.)" (*People v. Uhlemann* (1973) 9 Cal.3d 662, 666 (*Uhlemann*).)

Section 1387 "'is "sometimes loosely described as establishing a two-dismissal rule."'" (*People v. Hatch* (2000) 22 Cal.4th 260, 270 (*Hatch*), citing *People v. Superior Court* (*Martinez*) (1993) 19 Cal.App.4th 738, 744.) Section 1387, subdivision (a), establishes that "two dismissals pursuant to section 1385, 859b, 861, 871 or 995, bar retrial on felony charges except in limited circumstances." (*Hatch, supra,* 22 Cal.4th at p. 270.)

Section 1387, subdivision (a), provides in relevant part: "An order terminating an action pursuant to this chapter, or [s]ection 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense if it is a felony or if it is a misdemeanor

13

charged together with a felony and the action has been previously terminated pursuant to this chapter, or [s]ection 859b, 861, 871, or 995, or if it is a misdemeanor not charged together with a felony . . . ." Section 1387, subdivisions (b) [domestic violence misdemeanors] and (c) [complaint & indictment], and section 1387.1 [two dismissals violent felony excusable neglect] specify exceptions to the two-dismissal rule.

In *Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1016-1022 (*Burris*), the California Supreme Court provided a detailed review of the rationale behind section 1387 and its differing treatment of misdemeanors and felonies. As relevant here, the court stated, "Felony prosecutions . . . are subject to a two-dismissal rule; two previous dismissals of charges for the same offense will bar a new felony charge." (*Burris, supra,* 34 Cal.4th at p. 1019.) The court explained that because defendant, who had been charged with a felony, "has had charges for the same offense dismissed once before[,]" and "felony charges are subject to a two-dismissal rule, . . . section 1387 [did] not bar the instant charges." (*Burris, supra,* 34 Cal.4th at p. 1023.)

Here, section 1387 did not prohibit the prosecution from either filing the second complaint or obtaining an indictment and seeking dismissal of the second complaint. As to filing the second complaint, the initial issue is whether Judge Evans's ruling constituted a termination of the action pursuant to section 1387. Kocontes filed a nonstatutory motion to dismiss, and Judge Evans did not specify the statutory basis for his ruling. "'Because [section] 1387 refers to dismissals under specified statutes, it presumably does not apply to a dismissal made on nonstatutory grounds [citation].' [Citation.]" (*Berardi v. Superior Court* (2008) 160 Cal.App.4th 210, 218 (*Berardi*).)

But even if we were to conclude Judge Evans's ruling did constitute a termination of the action pursuant to section 1387, it was the *first* dismissal. Section 1387 prohibits a new felony charge after *two* previous charges for the same offense. (*Burris, supra,* 34 Cal.4th at p. 1023.) Pursuant to *Burris*, section 1387 did not

14

prohibit the district attorney from filing the second complaint charging Kocontes with murder for financial gain. (*Burris, supra,* 34 Cal.4th at p. 1023.)

With respect to obtaining an indictment and seeking dismissal of the second complaint, section 1387, subdivisions (c), specifically authorizes that procedure. Section 1387, subdivision (c), provides: "An order terminating an action is not a bar to prosecution if a complaint is dismissed before the commencement of a preliminary hearing in favor of an indictment filed pursuant to [s]ection 944 and the indictment is based upon the same subject matter as charged in the dismissed complaint, information, or indictment." An exception to the two-dismissal rule is when after a complaint has been filed the prosecution seeks an indictment based on the same charges prior to the preliminary hearing on the complaint. (*Uhlemann, supra,* 9 Cal.3d at p. 666.)

*People v. Cossio* (1977) 76 Cal.App.3d 369 (*Cossio*), is instructive. In that case, the prosecution dismissed the first complaint because it was unable to proceed and later filed a second complaint. (*Id*. at pp. 370-371.) Before a preliminary hearing was held on the second complaint, the grand jury returned an indictment. (*Id*. at p. 371.) After the trial court ordered the second complaint dismissed, defendant argued the two dismissals barred prosecution on the indictment. The *Cossio* court disagreed, explaining, "In our case, however, the indictment with which we are concerned was returned while the second municipal court complaint was still pending and there was, at that date, only one dismissal by a magistrate." (*Ibid*.) The court agreed with the prosecution "the subsequent dismissal of the second complaint was merely to clear the court records of what, in light of the return of the indictment, had become an unnecessary proceeding." (*Id*. at p. 372.) The court concluded the following: "The purpose of section 1387 is to prevent improper successive attempts to prosecute a defendant. Where, as here, the proceedings are ready to go forward, on an indictment properly filed, the subsequent dismissal of a complaint involving the same facts does not involve the defendant in the kind of successive prosecutions that section 1387 was designed to prevent. In fact, the

15

proceedings below effectuated, rather than impeded, the statutory objective. Defendant was relieved from the necessity of meeting the same charges in two different courts and was left with one prosecution to answer and defend." (*Id*. at p. 372; *People v. Schlosser* (1978) 77 Cal.App.3d 1007, 1011 (*Schlosser*) [same].) Section 1387, subdivision (c), is the Legislature's codification of the principles set forth in *Cossio* and *Schlosser*. (*Berardi, supra,* 160 Cal.App.4th at p. 222; Stats. 1984, ch. 924, § 1, p. 3090.)

Here, after Judge Evans dismissed the first complaint, the prosecutor filed the second complaint. Before the arraignment and the preliminary hearing on the second complaint, the prosecution obtained an indictment. On the prosecutor's motion, Judge Prickett dismissed the second complaint. Pursuant to section 1387, subdivision (c), and *Cossio* and *Schlosser*, this was permissible because the second complaint was a "duplicate filing" and Kocontes was left with one prosecution to answer and defend. Thus, Judge Prickett's dismissal did not constitute a termination of the action pursuant to section 1387. (*Berardi, supra,* 160 Cal.App.4th at p. 225.)

Kocontes argues section 1387, subdivision (c), is applicable only when the district attorney prevails on appeal. However, Kocontes cites to no authority to support his contention. Kocontes does criticize the prosecution for the timing of filing the second complaint and for judge shopping. A brief discussion of *Uhlemann, supra,* 9 Cal.3d 662, is warranted.

In that case, the majority held a magistrate's dismissal pursuant to section 1385 did not preclude the prosecution from a second filing of charges at a time when felony charges could be refiled ad infinitum. (*Uhlemann, supra,* 9 Cal.3d at p. 664.) The majority acknowledged though "the possibility that, in a particular case, repeated prosecutions for the same offense could lead to harassment of the accused, and we have no doubt that the courts retain the inherent power to protect against serious abuses of prosecutorial discretion in this regard." (*Id*. at p. 669.) In his dissent,

16

Justice Mosk, joined by Justice Trainor, stated that instead of pursuing its proper remedy, an appeal, the prosecutor engaged in "calculated forum shopping" in the grand jury where the weakness of its case would not be exposed and defendant would not be present. (*Id.* at p. 670, dis. opn. of Mosk, J.).) Justice Mosk opined this conduct only served to undermine the integrity of the courts. (*Id.* at p. 671, dis. opn. of Mosk, J.).)

First, we are bound to follow the majority opinion of the court and not the dissenting opinion. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Second, the abuses the *Uhlemann* dissent were concerned with were addressed in 1975, two years after *Uhlemann*, when the Legislature amended section 1387 to add the felony dismissal limit. (Stats. 1975, ch. 1069, § 1, p. 2615 [amending § 1387 to add felony dismissal limit]; *Burris, supra,* 34 Cal.4th at p. 1019 [until Legislature amended section 1387 in 1975 interest in prosecuting felonies so great felony charges could be refiled endlessly].) Third, as we explain above, the prosecution's conduct was permissible, and not uncommon. Finally, Judge Prickett's decision to hear Kocontes's motions while sitting in Department C5, the master calendar court, while unusual, was within his discretion. Thus, the prosecution was permitted to proceed first on the second complaint and then on the indictment after dismissal of the second complaint. We must now determine whether Judge Evans's ruling had collateral estoppel effect on the indictment in case No. 13ZF0163. We conclude it did not.

*2. Section 1238*

Section 1238, subdivision (a)(1), authorizes the prosecution to appeal from an order setting aside inter alia a complaint, and section 1238, subdivision (a)(8), permits the prosecution to appeal from, "An order or judgment dismissing or otherwise terminating all or any portion of the action including such an order or judgment after a verdict or finding of guilty or an order or judgment entered before the defendant has been placed in jeopardy or where the defendant has waived jeopardy." Section 1238, subdivision (b), provides: "If, pursuant to paragraph (8) of subdivision (a), the people

17

prosecute an appeal to decision, or any review of such decision, it shall be binding upon them and they shall be prohibited from refiling the case which was appealed."

In *Anderson, supra,* 66 Cal.2d at page 864, immediately after the dismissal order of the indictment under section 995, the prosecution filed a notice of appeal from the order setting aside the indictment. Two weeks later, while the appeal was pending, the court held a hearing to determine if an information could be filed against defendant. (*Ibid*.) After a preliminary hearing, defendant was held to answer, an information was filed, and the matter was set for trial. (*Ibid*.) Prior to the jury being sworn, the trial court inquired whether it had subject matter jurisdiction due to the pending appeal. (*Ibid*.) Defendant filed a writ petition seeking a determination of the jurisdictional issue, arguing he should not be compelled to defend the appeal and simultaneously prepare for trial. (*Id*. at p. 865.)

The California Supreme Court in *Anderson*, characterizing section 1238 as an "important right" of the prosecution, stated "the People may *simultaneously* file an appeal from the dismissal of the first pleading and seek a new accusation." (*Anderson, supra,* 66 Cal.2d at pp. 864, 866.) The court added, however, the prosecution must elect between the two remedies "to foreclose the possibility of harassment of the defendant, and to that end the People should elect as soon as feasible between maintaining the appeal or proceeding under the new accusatory pleading. At the latest, this election should occur either when the new accusatory pleading withstands a motion under section 995 or at the time of arraignment for plea, *whichever first occurs*. We thereby assure the People an opportunity to obtain a valid accusatory pleading on which to go to trial, yet also guarantee that the defendant will not be called upon to defend an appeal and at the same time a trial on the basis of a second accusation, both resulting from the same alleged crime." (*Id*. at p. 867, italics added.)

Here, as we explain above, the prosecution could properly file the second complaint because the action had been terminated just once, and obtain an indictment and

18

dismiss the second complaint (§ 1387, subd. (c)). The prosecution was also permitted to appeal Judge Evans's ruling granting Kocontes's motion to dismiss for lack of territorial jurisdiction (§ 1238). Additionally, the prosecutor made its election of remedies,[8] dismissing the appeal of Judge Evans's ruling after obtaining the indictment as required by *Anderson, supra,* 66 Cal.2d at page 867. The issue we must decide is what effect the prosecution's dismissal of its appeal in October 2014 had on Judge Prickett's ruling in July 2013.

---

[8] An interesting issue but unfortunately one that is not before us is the timeliness of the district attorney's election of remedies. The *Anderson* court stated the prosecution must exercise its election of remedies "when the new accusatory pleading withstands a motion under section 995 or at the time of arraignment for plea, *whichever first occurs.*" (*Anderson, supra,* 66 Cal.2d at pp. 864, 867, italics added.)

Judge Evans made his ruling on May 31, 2013. On June 14, 2013, Judge Prickett ordered the indictment filed. The prosecution appealed from Judge Evans's ruling on July 25, 2013, eight weeks after Judge Evans's ruling and six weeks after the indictment. Judge Jensen arraigned Kocontes in November 2013, and Judge Stotler denied Kocontes's section 995 motion in August 2014. The prosecution dismissed its appeal in October 2014, 11 months after Kocontes was arraigned and when the prosecution should have made its election pursuant to *Anderson*.

In his habeas corpus petition, Kocontes does not cite to *Anderson* or provide any meaningful discussion of this issue, nor does he discuss section 1238 in any meaningful way. Kocontes asserts in conclusory fashion the prosecution's abandonment of its appeal on the eve of oral argument after "15 months" forced Kocontes to "expend scarce resources." Kocontes does cite to *Anderson* and develop this argument more fully in his informal reply and traverse. The argument that dismissal of an appeal authorized by section 1238 renders the judgment final necessarily includes the argument the prosecution's decision to file and dismiss that appeal was untimely. These allegations and facts should have been in the petition.

"'*While the traverse may allege additional facts in support of the claim on which an order to show cause has issued, attempts to introduce additional claims or wholly different factual bases for those claims in a traverse do not expand the scope of the proceeding which is limited to the claims which the court initially determined stated a prima facie case for relief.*' [Citations.] [¶] For similar reasons, belatedly raising new claims or theories for the first time in the informal reply brief [citation] is also improper. 'If the imprisonment is alleged to be illegal, *the petition* must also state in what the alleged illegality consists.' [Citation.]" (*Reno, supra,* 55 Cal.4th at pp. 458-459, fn. 15.) Kocontes did not adequately raise the timeliness of the election of remedies in his habeas corpus petition, and thus that issue is not before us.

Kocontes asserts Judge Evans's ruling in case No. 13CF0463 was final for purposes of collateral estoppel in the indictment case, case No. 13ZF0163, before Judge Prickett because the prosecution dismissed its appeal of Judge Evans's ruling. The extent of Kocontes's argument on this issue is the following: At the hearing, Judge Prickett stated Judge Evans's ruling was not final because it was on appeal and thus Judge Evans's ruling is final because the prosecution later dismissed its appeal.

Needless to say, Judge Prickett's comments about the procedural posture of the case at the time of his ruling are not binding on this court. Kocontes also cites to *People v. Sims* (1982) 32 Cal.3d 468 (*Sims*), superseded by statute as stated in *Gikas v. Zolin* (1993) 6 Cal.4th 841, 851 (*Gikas*), but he does not explain how *Sims* is relevant. When a party asserts a point but fails to support it with reasoned argument and citations to relevant authority, we may treat the argument as waived and disregard it. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

Kocontes's assertion the prosecution's dismissal of its appeal of Judge Evans's ruling renders Judge Evans's ruling final for purposes of collateral estoppel, and invalidates Judge Prickett's *prior* ruling, contradicts the plain meaning of sections 1387 and 1238. Judge Prickett made his ruling while the appeal was pending in case No. G048763 and before Kocontes was arraigned on the indictment. Kocontes contends the prosecution's only remedy was its appeal of Judge Evans's ruling. But section 1387 expressly allows refiling of a dismissed case, and section 1238 authorizes the prosecution to appeal from the order dismissing the case and elect which to pursue. Had the prosecution pursued the appeal of Judge Evans's ruling and this court issued an opinion, Judge Evans's ruling would be final (§ 1238, subd. (b)). But the prosecution chose to obtain an indictment while the appeal was pending in case No. G048763 and later dismiss that appeal, which is authorized by sections 1387 and 1238. Acceptance of Kocontes's theory would render the election of remedies provision meaningless.

20

Judge Evans's ruling did not have collateral estoppel effect in the newly filed case. Although one superior court judge may not overrule another superior court judge (*People v. Goodwillie* (2007) 147 Cal.App.4th 695, 713 ["rule that one superior court judge may not reconsider the previous ruling of another superior court judge"]), Judge Prickett did not overrule Judge Evans because they presided over different causes.

Kocontes's reliance on *Sims, supra,* 32 Cal.4th 468, is meritless. In *Sims*, the court held an administrative determination defendant had not engaged in welfare fraud barred the State—under the doctrine of collateral estoppel—from prosecuting defendant for a criminal offense involving the same conduct. (*Sims, supra,* 32 Cal.4th at pp. 479, 489-490.) *Sims* is inapplicable because the identical factual allegations at issue in the administrative hearing were at issue in the criminal prosecution. At issue here was a legal question decided before the preliminary hearing in a different case. Additionally, in response to *Sims*, the California Legislature enacted legislation stating administrative proceedings have no collateral estoppel effect in criminal prosecutions. (*Gikas, supra,* 6 Cal.4th at p. 851; see Veh. Code, §§ 13353.2, subd. (e), 13557, subd. (f), 13558, subd. (g), 13559, subd. (b).) Therefore, the prosecution's dismissal of its appeal of Judge Evans's ruling did not render that decision final in the indictment case before Judge Prickett for purposes of collateral estoppel.

*C. Collateral Estoppel's Policies*

The policies underlying collateral estoppel are the following: (1) minimizing repetitive litigation to promote judicial economy; (2) preventing inconsistent judgments to promote integrity of the judicial system; and (3) preventing a person from being harassed by vexatious litigation. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 343.) Kocontes contends the policies underlying collateral estoppel require its application in this case. Not so.

21

First, although promoting judicial economy is a factor to be considered in every case, as we explain above, the prosecution's election of remedies was authorized by statute. Section 1238 authorizes the prosecution to appeal in a dismissed case, section 1387 allows filing a new case, and *Anderson* requires the prosecution to elect between which to pursue. Second, it is true Judge Prickett's ruling is inconsistent with Judge Evans's ruling. But we are not convinced this undermines trust in the judicial system. As we explain above, the rulings were in different cases. Criminal law's statutory framework allows for multiple charging documents in early stages of the proceedings.

Finally, filing a new complaint and obtaining an indictment that superseded the complaint after appealing Judge Evans's ruling cannot be considered vexatious litigation. The appeal and the filing of a new complaint and obtaining an indictment were authorized by statute. As we explain above, the issue of the timing of the election of remedies is not before us. None of the policies underlying application of collateral estoppel outweigh the prosecutor's statutory right to file a new case. Therefore, the policies underlying collateral estoppel do not require its application in this case

D. *Habeas Corpus Procedure*

In his traverse, citing to California Rules of Court, rule 8.385(d), and case authority holding issuance of an OSC indicates a court's preliminary assessment petitioner is entitled to relief if the factual allegations are proved, Kocontes claims that because the district attorney admitted procedural facts the California Supreme Court already considered when issuing its OSC, this court must grant Kocontes's petition and order him released. Not so.

California Rules of Court, rule 8.385(d), provides: "If the petitioner has made the required prima facie showing that he or she is entitled to relief, the court must issue an [OSC]. *An [OSC] does not grant the relief sought in the petition.*" (Italics added.) We need not provide a detailed treatise on habeas corpus practice. Suffice it to

22

say, after the petitioner files a habeas corpus petition and a court issues an OSC signifying its preliminary determination of a prima facie case for relief, the respondent may file a return alleging facts establishing the legality of the petitioner's confinement and respond to the petitioner's contentions the confinement is unlawful. Any facts not denied in the return are admitted as true. In response to the return, the petitioner may file a traverse and like the return any facts not denied in the traverse are admitted as true. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474-479 [providing an exhaustive discussion of habeas corpus practice] (*Duvall*).)

In *Duvall*, the California Supreme Court explained: "'[W]here there are no disputed *factual* questions as to matters outside the trial record, the *merits* of a habeas corpus petition can be decided without an evidentiary hearing.' [Citations.] Thus, '[w]hen the return effectively admits the material *factual* allegations of the petition and traverse by not disputing them, we may resolve the *issue* without ordering an evidentiary hearing.' [Citation.]" (*Duvall, supra,* 9 Cal.4th at pp. 478-479, italics added.)

Here, the district attorney admitted Kocontes was indicted for the murder of Kanesaki, was in custody, and asserted California has jurisdiction over him pursuant to section 778a, subdivision (a). The district attorney denied the other allegations in Kocontes's habeas corpus petition, including that collateral estoppel prohibited prosecution of Kocontes in the indictment. Contrary to Kocontes's assertion otherwise, the California Supreme Court's OSC in conjunction with the district attorney's admission does not automatically entitle Kocontes to relief. The district attorney did not admit any facts establishing collateral estoppel applies in this case. As *Duvall* stated, when there are no disputed factual questions because a return effectively admits the petition's factual allegations, the court may resolve the legal issue without an evidentiary hearing. (*Duvall, supra,* 9 Cal.4th at pp. 478-479.) That there are no disputed *factual* questions when a return effectively admits the petition's factual allegations does not automatically entitle the petitioner to the relief requested without addressing the merits of the legal issue.

23

## DISPOSITION

The petition for writ of habeas corpus is denied.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.

**THOMPSON, J.,** Dissenting—I respectfully dissent. Judge Evans granted Kocontes's motion to dismiss in case No. 13CF0463 "for lack of territorial jurisdiction." As I will explain, a dismissal for lack of territorial jurisdiction is not a dismissal in the furtherance of justice within the meaning of Penal Code section 1385 (all further statutory references are to this code), and it is not subject to the "two-dismissal" rule of section 1387.

"A dismissal for lack of territorial jurisdiction is qualitatively different from those situations in which dismissals in the furtherance of justice [under section 1385] have been approved. In the former situation, the court is not empowered to hear the case; in the latter it *chooses* to dismiss the case because other factors outweigh its authority to act." (*Casey v. Superior Court* (1989) 207 Cal.App.3d 837, 844 (*Casey*).)

The conclusion that a dismissal for lack of territorial jurisdiction is not a dismissal under section 1385 is supported by the fact a number of methods exist to challenge a court's power to hear a case. If a court acts in excess of its territorial jurisdiction, a defendant may seek relief through extraordinary measures such as habeas corpus to prevent a court from proceeding. (§ 1487; *In re Huber* (1930) 103 Cal.App. 315.) Likewise, the lack of territorial jurisdiction may be raised in a motion for new trial or on appeal. (See, e.g., *People v. Gerundo* (1952) 112 Cal.App.2d 863, 865–869.)

Further, section 1385 explicitly limits the types of dismissals which can be considered to have been made in the furtherance of justice by providing: "A dismissal shall not be made for any cause that would be ground of demurrer to the accusatory pleading." (§ 1385, subd. (a).) Lack of jurisdiction is a ground for demurrer. (§ 1004, subd. (1).) And because this type of defect cannot be cured by amendment, an action in excess of territorial jurisdiction must be dismissed pursuant to section 1008 after the demurrer is sustained, which is exactly what Judge Evans did in case No. 13CF0463.

Finally, dismissals made pursuant to section 1008 are not among the terminating orders specifically enumerated in section 1387. So the two-dismissal rule of section 1387 does not apply. (*Casey*, *supra*, 207 Cal.App.3d at pp. 844-845.)

1

In sum, Judge Evans's dismissal for lack of territorial jurisdiction in case No. 13CF0463 was not a dismissal within the meaning of section 1385 and the two-dismissal rule of section 1387 did not apply.  For these reasons:  (a) the People were not authorized to file the complaint in case No. 13CF1773 or seek the indictment in case No. 13ZF0163; and (b) the only manner in which the People were authorized to challenge the dismissal was to appeal, which they did, although they later abandoned that appeal.

Under these circumstances, Judge Prickett erred by overruling Kocontes's demurrer and denying his motion to dismiss in case No. 13ZF0163.  To hold otherwise is to permit prosecutorial forum shopping, to sanction refilling dismissed charges in the hope that a different judge will view the territorial jurisdiction issue more favorably, and to deprive this court of its jurisdiction to review the correctness of Judge Evans's ruling.  The petition for habeas corpus must be granted to prevent the trial court from proceeding.

THOMPSON, J.

2